MORGAN et al. v. UNITED STATES et al.
Nos. 2328–2378.

District Court, W. D. Missouri, W. D.
July 2, 1937.

John B. Gage, of Kansas City, Mo., for petitioners.

Wendell Berge, Harold M. Stephens, and Hugh B. Cox, all of Washington, D. C., for defendants.

Before VAN VALKENBURGH, Circuit Judge, and REEVES and OTIS, District Judges.

OTIS, District Judge.

The principal question now presented in these cases (the cases involve the validity of an order made by the Secretary of Agriculture fixing the maximum rates to be charged by market agencies for buying and selling livestock at the Kansas City Stock Yards) is whether the Secretary, before he made the order which is attacked, gave the plaintiffs such a hearing as they were entitled to by law. That question is presented following a remand of the cases after an appeal. The cases, consolidated for trial, had been tried and were adjudged by this court (8 F.Supp. 766). The Supreme Court reversed our decree and remanded the cases for the determination of the question "whether plaintiffs had a proper hearing." 298 U.S. 468, 56 S.Ct. 906, 912, 80 L.Ed. 1288. As an introduction to our discussion of that question we here incorporate the first and certain other paragraphs of the opinion of the Supreme Court.

"The proceeding[1] was instituted by an order of the Secretary of Agriculture in April, 1930, directing an inquiry into the reasonableness of existing rates. Testimony was taken and an order prescribing rates followed in May, 1932. An application for rehearing, in view of changed economic conditions, was granted in July, 1932. After the taking of voluminous testimony, which was concluded in November, 1932, the order in question was made on June 14, 1933. Rehearing was refused on July 6, 1933.

"Plaintiffs then brought these suits attacking the order, so far as it prescribed maximum charges for selling livestock, as illegal and arbitrary and as depriving plaintiffs of their property without due process of law in violation of the Fifth Amendment of the Constitution. The District Court of three judges entered decrees sustaining the order and dismissing the bills of complaint. * * * Motions for rehearing were denied, and, by stipulation, the separate de-

crees were set aside and a joint and final decree was entered to the same effect. Plaintiffs bring this direct appeal."

The Supreme Court then indicated in its opinion the questions raised on the merits, after which the opinion continues:

"Before reaching these questions, we meet at the threshold of the controversy plaintiffs' additional contention that they have not been accorded the hearing which the statute requires. They rightly assert that the granting of that hearing is a prerequisite to the making of a valid order. The statute provides (42 Stat. 159, 166, § 310; 7 U.S.C. § 211, 7 U.S.C.A. § 211):

"'Sec. 310. Whenever after full hearing upon a complaint made as provided in section 309 [section 210 of this chapter], or after full hearing under an order for investigation and hearing made by the Secretary on his own initiative, either in extension of any pending complaint or without any complaint whatever, the Secretary is of the opinion that any rate, charge, regulation, or practice of a stockyard owner or market agency, for or in connection with the furnishing of stockyard services, is or will be unjust, unreasonable, or discriminatory, the Secretary—

"'(a) May determine and prescribe what will be the just and reasonable rate or charge, or rates or charges, to be thereafter observed in such case, or the maximum or minimum, or maximum and minimum, to be charged, and what regulation or practice is or will be just, reasonable, and nondiscriminatory to be thereafter followed.'

"The allegations as to the failure to give a proper hearing are set forth in paragraph IV of the bill of complaint * * *. The allegations in substance are: That separate hearings were not accorded to the respective respondents (plaintiffs here). That, at the conclusion of the taking of the testimony before an examiner, a request was made that the examiner prepare a tentative report, which should be subject to oral argument and exceptions, so that a hearing might be had before the Secretary without undue inconvenience to him, but that the request was denied, and no tentative report was exhibited to plaintiffs and no oral argument upon the issues presented by the order of inquiry and the evidence was at any time had before the Secretary. That the

---

[1] That is, "the proceeding" which resulted in the Secretary's order fixing rates.

Secretary, without warrant of law, delegated to Acting Secretaries the determination of issues with respect to the reasonableness of the rates involved. That, when the oral arguments were presented after the original hearing, and after the rehearing, the Secretary was neither sick, absent, nor otherwise disabled, but was at his office in the Department of Agriculture, and the appointment of any other person as Acting Secretary was illegal. That the Secretary at the time he signed the order in question had not personally heard or read any of the evidence presented at any hearing in connection with the proceeding, and had not heard or considered oral arguments relating thereto or briefs submitted on behalf of the plaintiffs, but that the sole information of the Secretary with respect to the proceeding was derived from consultation with employees in the Department of Agriculture out of the presence of the plaintiffs or any of their representatives.

"On motion of the government, the District Court struck out all the allegations in paragraph IV of the bill of complaint, and the plaintiffs were thus denied opportunity to require an answer to these allegations or to prove the facts alleged.

\*     \*     \*     \*     \*     \*

"The outstanding allegation, which the District Court struck out, is that the Secretary made the rate order without having heard or read any of the evidence, and without having heard the oral arguments or having read or considered the briefs which the plaintiffs submitted. That the only information which the Secretary had as to the proceeding was what he derived from consultation with employees of the Department.

"The other allegations of the stricken paragraph do not go to the root of the matter. \*   \*   \*""

1. The essence then of the assertion of failure of the Secretary of Agriculture to give to plaintiffs that full hearing to which they were entitled is that the order under review was made by the Secretary "without having heard or read any of the evidence and without having heard the oral arguments or having read or considered the briefs which the plaintiffs submitted." That "outstanding allegation" now has been denied. Evidence has been heard. Not only has it not been proved that the Secretary did not read any of the evidence, nor hear the oral arguments, nor read and consider the briefs which plaintiffs submitted, but

exactly the opposite has been proved. The Secretary did read parts of the transcript of the testimony; he did hear (not with his ears but by reading) the oral arguments, he did read and consider the briefs submitted by plaintiffs. These things have been proved unless indeed we shall reject the testimony of the Secretary of Agriculture as incredible. That alternative, absent a much stronger showing than is here, is not to be thought of in connection with the testimony of an honorable and distinguished head of a great executive department of the federal government.

The Supreme Court has not said that it was the duty of the Secretary of Agriculture to hear or read all the evidence and, in addition thereto, to hear the oral arguments and to read and consider briefs. If the Supreme Court had said that it would have meant that the Packers and Stockyards Act, 7 U.S.C.A. § 181 et seq. cannot be administered. It is entirely impracticable to administer it if it imposes such a duty on the Secretary personally. Consider that in this very case the transcript of the oral testimony fills 13,000 pages. The exhibits, several hundred, fill more than 1,000 pages. A narrative statement of just a part of the oral testimony fills 500 printed pages. Learned counsel for plaintiffs assert indeed that they do not mean to contend that the Secretary personally must have read all of this mass of testimony. Such a contention could not be maintained. Let it be frankly stated now that the judges of this court, whose duty it was to consider the case de novo (since it involved constitutional issues), did not read all this testimony. We think, moreover, that it may be predicted with some assurance that all this testimony will not be read by the justices of the Supreme Court when, as they must, they consider the cases on the merits.

It is the testimony of the Secretary of Agriculture that he heard the oral argument (by reading it) and that he read the briefs. It is his testimony that he gave consideration to the findings of fact (they were 180 in number and filled more than 100 printed pages). It is his testimony that he examined to some extent even the voluminous transcript of the oral testimony and the exhibits. He had besides the benefit of a discussion of the oral testimony and exhibits by trusted assistants who had read every line and examined each exhibit. That full hearing which the law required did not demand that he should do more. Evidence taken by an

examiner, as the evidence here was taken, "may be sifted and analyzed by competent subordinates." So the Supreme Court has said. How can it be said that the Secretary did not have the benefit of and did not consider the results of a sifting and analyzing of evidence by competent subordinates?

■ It cannot well be argued to this court that the findings of fact which were studied by the Secretary do not represent a sifting and analyzing of the evidence by his subordinates. This court has found that those findings not only are supported by some evidence, but also that they are supported by the weight of the evidence. Upon its own independent consideration of the evidence this court arrived at the same findings as those which were reached by subordinates of and by the Secretary. The Secretary, however, had much more than the findings. Other subordinates who had read all the testimony and examined all exhibits, discussed and reviewed the whole evidence with the Secretary.

The Supreme Court's meaning when it said that the evidence might be "sifted and analyzed by competent subordinates" for the Secretary is robbed of all practical significance and value when interpreted as by plaintiff's counsel, who say that evidence cannot be sifted and analyzed unless, as to any controverted issue, the testimony on both sides is set out either in full or in epitome. It seems to us that such an interpretation disregards the true and natural meaning of the words "sifted" and "analyzed." The very purpose of sifting and analyzing evidence is to extract from it the pure gold of truth,—the real and ultimate facts.

If, however, testimony is not "sifted" and "analyzed" unless as to any controverted issue the testimony for and against a given conclusion is presented, are plaintiffs in a position to contend that the Secretary did not have the benefit of a summary of the testimony most favorable to plaintiffs? Did not plaintiffs incorporate a summary of the testimony in oral arguments and briefs? The Secretary read a transcript of the oral arguments and he read the briefs. If in them counsel omitted to epitomize the testimony most favorable to their contentions can they challenge the fullness of the hearing on that account? A defendant even in a criminal case scarcely would be heard to challenge either the fairness or fullness of the hearing accorded him, let us say on a motion for a new trial, if he did not so much as direct the attention of the court to the evidence in his favor.

As to the issue made by the answer to Paragraph IV of the bill and upon the evidence heard we make the following findings of fact: We find that the Secretary of Agriculture caused to be sent to his private office for his use and consideration in connection with the performance of his function the full transcript of all the testimony taken in the proceeding, together with the exhibits; that he was advised by the Solicitor of the Department of Agriculture[1] that his duty was a personal one and that the order must be his order based on his consideration of the record; that the Secretary personally read and considered a transcript of the whole of the oral argument before the Assistant Secretary and the briefs of the parties (in which oral arguments and briefs were such summaries of the evidence as the parties desired to incorporate therein); that, in addition to his study of oral arguments and briefs, the Secretary studied and considered findings made by competent subordinates in the Department of Agriculture resulting from a sifting and analyzing of all the evidence and that, further, he considered an oral review and discussion of all the evidence by other competent subordinates who personally had read every line of testimony and inspected each exhibit, and that he supplemented all of the foregoing by himself reading and considering parts of the transcript of the oral testimony.

Based upon the findings of fact we conclude as a matter of law that the Secretary gave plaintiffs that hearing to which the law entitled them.

■ 2. Obviously the only "further proceedings" in this court contemplated by the Supreme Court were such as would be necessary to determine the issue newly to be made following the handing down of the opinion of the Supreme Court. If, however, as is contended by learned counsel for plaintiffs, the cause really has been remanded, not for "further proceedings" to "determine whether plaintiffs had a proper hearing" but for a rehearing, then, as to all issues, there has been accorded such a rehearing. We have reached the same conclusions on the merits as to the facts and law as

---

[1] Hon. Seth Thomas, now United States Circuit Judge in the Eighth Circuit, was then Solicitor of the department. His testimony especially is significant.

those heretofore announced and we incorporate them herein by reference.

3. Exceptions are allowed to the conclusion of law newly stated here and also to those herein incorporated by reference.

Counsel for defendants will submit for approval and entry an appropriate form of decree dismissing the bills.

VAN VALKENBURGH, Circuit Judge (dissenting).

I am unable to conclude from the testimony at this rehearing that the Secretary of Agriculture gave to the determination of this matter the personal consideration which is his duty under the provisions of the Packers and Stockyards Act, 7 U.S.C.A. § 181 et seq., as construed by the Supreme Court. It is not an impersonal obligation. The proceeding has a quality resembling that of a judicial proceeding, in which the one who decides shall be bound to reach his conclusion "uninfluenced by extraneous considerations which in other fields might have play in determining purely executive action". The proceeding is not one of ordinary administration, but looks to legislative action, in which the Secretary is the agent of Congress in the fixing of rates for market agencies. So that, as said by the Supreme Court, the authority conferred by the Act is not given to the Department of Agriculture, as a department in the administrative sense, but to the Secretary himself as the legislative agent of the Congress. That duty "undoubtedly may be an onerous one, but the performance of it in a substantial manner is inseparable from the exercise of the important authority conferred." Morgan v. United States, 298 U.S. 468, 482, 56 S.Ct. 906, 912, 80 L.Ed. 1288.

There can be no doubt that, at the time of original trial in this court, it was the theory of the government, as expressed by its counsel, that the authority conferred by section 310 of the Packers and Stockyards Act, 7 U.S.C.A. § 211, is given to the Department of Agriculture as a department in the administrative sense. This is apparent from the language of the motion to strike paragraph IV, among other parts of complainants' bill, "for the reason that the allegations contained in said portions of said petition are impertinent, redundant, incompetent, irrelevant, and immaterial to any issue which may properly be raised in this suit". This position was maintained on appeal before the Supreme Court, as appears from the argument of appellees, reported in 298 U.S. at pages 469, 471, 56 S.Ct. at page 907. Counsel expressly referred to the language of this court to the effect "that the theory of these allegations is supported by nothing in the Act and that a construction of the Act inconsistent with that theory would destroy it altogether as a measure capable of practical administration". Counsel added in that presentation that to permit parties affected by "administrative decisions" thus to challenge orders, as signed upon insufficient deliberation, "might well lead to the paralysis of *administrative* tribunals". (Italics supplied). Obviously no distinction was made between departmental proceedings in an administrative sense, and those of a *quasi judicial* character.

It is impossible, in my judgment, to read the testimony of the Secretary without recognizing that he carried into the final determination reached this conception of the proceeding as one belonging to his department in an administrative sense. The examinations he made were casual and perfunctory in the extreme. He says his final determination represented his reactions to the findings of the men in the Bureau of Animal Industry. He accepted these findings because he regarded his subordinates as in a better position than himself to make the decision. In his view "the phrase 'Secretary of Agriculture' is perhaps used in connections with regard to laws of this sort in the broad sense as well as in the narrow sense".

While undoubtedly the Secretary may have such assistants to analyze and appraise evidence for his convenience and advice, this does not and should not mean that such appraisal may amount to final valuation, where the responsibility of decision is expressly addressed to the Secretary alone, sitting in a quasi judicial capacity. And this means a moral as well as a legal responsibility, where large interests, as here, are critically affected.

The findings accepted by the Secretary emphasize the importance and necessity of this market. If it is to be maintained, those who conduct it must receive a fair and reasonable return upon their services. This is true apart from a consideration of the question of confiscation as such. For this reason the conscientious judgment of the Secretary himself apart from his administrative character is demanded as a duty.

Of course the Secretary takes official responsibility when he signs any administrative order prepared by his department, but

that is not the quality of responsibility demanded in a proceeding of this nature.

If it be true, as contended, that the act cannot be administered except upon the superficial basis here disclosed, then legislation should be made to meet that situation. Necessarily I have made but brief reference to record contents in stating these conclusions. In my judgment the recitals of the Secretary as a whole confirm these views.

Being of opinion that the proceedings in this case differed in no substantial respect from those ordinarily involved in departmental administration, and that a serious condition in the life of this market has resulted from the purely casual and mechanical treatment it has received, I must respectfully dissent from the views expressed by my associates.