**NATIONAL NUTRITIONAL FOODS ASSOCIATION and Solgar Co., Inc., Petitioners,**

v.

**FOOD AND DRUG ADMINISTRATION, UNITED STATES DEPARTMENT OF HEALTH, EDUCATION AND WELFARE, Respondent.**

No. 73–2129.

United States Court of Appeals, Second Circuit.

Submitted Jan 15, 1974.

Decided Feb. 1, 1974.

Bass & Ullman, New York City, for petitioners.

Howard S. Epstein, Asst. Chief, Consumer Affairs Section, Dept. of Justice, Washington, D. C. (Stephen H. Mc-Namara, Howard M. Holstein, Food and Drug Div., Dept. of Health, Education, and Welfare, Rockville, Md., of counsel), for respondent.

Before MOORE, FRIENDLY and ANDERSON, Circuit Judges.

FRIENDLY, Circuit Judge:

This motion is made in one of fifteen petitions to review two orders of the Food and Drug Administration (FDA) signed by Alexander M. Schmidt, Commissioner of Food and Drugs, on July 25, 1973, and published in the Federal Register on August 2, 1973. These orders added to 21 C.F.R. Part 80—Definitions and Standards of Identity for Food for Special Dietary Uses, 38 F.R. 20730–40, and revised Part 125—Label Statements Concerning Dietary Properties of Food Purporting to Be or Represented for Special Dietary Uses, 38 F.R. 20708–18. These voluminous regulations, fully effective Dectmber 31, 1974, are the end-product of a Notice of Proposal To Revise Regulations published in 1962, 27 F.R. 5815. The final phase began with a notice of public hearing in 1968, 33 F.R. 8679; the hearings lasted for almost two years and produced over 32,000 pages of testimony and thousands of pages of exhibits. Each set of regulations is preceded by several pages of comment (hereafter the preamble) in which the exceptions are summarized and reasons are given for their rejection or adoption. The petitions to review, filed in this Circuit and in the Ninth and District of Columbia Circuits, have all found their way to this court under 28 U.S.C. § 2112(a) and have been consolidated.

The basis for the instant motion to take the deposition of Commissioner Schmidt and for related relief or to appoint a special master to achieve similar ends is as follows: Tentative final orders signed by Charles C. Edwards, then Commissioner of Food and Drugs, were published in January, 1973, 38 F.R. 2143–50, 2152–62; the time for filing exceptions expired on April 20, 1973. Meanwhile Commissioner Edwards had resigned. The formal exceptions spread

over 1,000 pages; there were 20,000 additional letters. Commissioner Schmidt took office on July 12, 1973. During the 13-day period ending with the signing of the orders here under review, he signed and caused to be published 14 final regulations, 13 proposed regulations and 6 notices stretching over many pages of the Federal Register, many of which deal with the composition or labelling of food products.[1] The final regulations here at issue contain a recital that the Commissioner had "considered the evidence received at the hearing, the hearing examiner's report, and all the exceptions and written arguments which were filed . . ." 38 F.R. at 20712; *see id.* at 20734. The relevant statute, 21 U.S.C. § 371(e)(3), directs that after the prescribed procedures for hearing and objections, the Secretary of Health, Education and Welfare, whose powers have been delegated to the Commissioner of Food and Drugs, 21 C.F.R. §§ 2.68–2.-98, "shall by order act upon such objections and make such order public."

In an effort to develop that it was physically impossible for the new Commissioner to have reviewed and considered the objections prior to signing the orders here at issue, the petitioners instituted an action against him in the District Court for the Southern District of New York. Judge Gurfein dismissed this for lack of jurisdiction. He noted that, as the parties agreed, under 21 U.S.C. § 371(f) jurisdiction to review the orders lay in the courts of appeals. Plaintiffs contended, however, that a court of appeals could not take additional evidence before itself both because § 371(f)(2) empowers the court of appeals, when a petitioner applies for leave to adduce additional evidence and makes a proper showing, only to "order such additional evidence . . . to be taken before the Secretary" which would be manifestly inappropriate here, and because its collegial nature makes a court of appeals institutionally ill-adapted to take evidence itself. From the premise thus thought to be established, plaintiffs reasoned that, under § 9(b) of the Administrative Procedure Act, now 5 U.S.C. § 703, "the special statutory review proceeding" was inadequate for their immediate needs and an action lay in the district court. Judge Gurfein rejected both branches of plaintiffs' premise largely on the authority of Braniff Airways, Inc. v. C.A.B., 126 U.S.App.D.C. 399, 379 F.2d 453 (1967), where the court of appeals had obtained, apparently without objection, extra-record material relating to the internal processes of the Civil Aeronautics Board relevant to the claims of procedural irregularity raised before it. He further noted, with respect to the claim of institutional inadequacy on the part of the court of appeals, that this court could appoint a special master, citing a number of contempt proceedings for violations of orders of the Labor Board.[2]

■■ The *Braniff* case may not be quite so authoritative as the district judge thought, since the Federal Aviation Act, 49 U.S.C. § 1486, contains no express provision for the taking of additional evidence, although it probably

---

1. Examples are Amino Acids in Food for Human Consumption, dated July 19, 1973, 38 F.R. 20036–39, and Standards of Quality for Foods for Which There Are No Standards of Identity, dated July 25, 1973, 38 F.R. 20726–30. Others deal with unrelated problems, e. g., Ch. 1, Part 273, Additional Standards for Source Plasma (Human) Used in Preparation of Blood Derivatives Intended for Injection, dated July 17, 1973, 38 F.R. 19362–68.

2. The district judge stated that the only thing which gave him pause was a remark by the writer in Toilet Goods Ass'n v. Gard-

ner, 360 F.2d 677, 684, n. 8 (2 Cir. 1966), aff'd, 387 U.S. 158, 167, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967), that in the review of rules "a district court may be in a better position than a court of appeals to carry out fact finding . . ." We agree that this afforded no ground for a different decision. The comment was made with respect to rules not protected by the usual provisions making findings supported by substantial evidence conclusive and limiting the production of new evidence. Both sides in the *Toilet Goods* case contemplated a trial if the Government's motion to dismiss were not granted.

would be construed to require this to be taken before the Civil Aeronautics Board if taken at all. We nevertheless are in complete agreement with the court's rejection of petitioners' premise. The provision in 21 U.S.C. § 371(f)(2) that additional evidence shall be taken before the Secretary refers to evidence that might alter his determination on the merits and for that reason should be taken before him—not to evidence that, because of procedural irregularity, his determination was a nullity. A reviewing court has inherent power to obtain evidence needed to enable it to decide a contention of this sort. The difficulties in a court of appeals' informing itself with respect to such a matter are imaginary. There is nothing to prevent the hearing of evidence by three judges, as sometimes occurs in courts convoked under 28 U.S.C. §§ 2281 and 2282, cumbersome though it be.[3] Apart from the possibility of appointing a special master, an alternate form of relief sought here by petitioners, the evidence desired could doubtless be obtained by deposition, as petitioners primarily propose. We thus entertain no doubt of our power to grant petitioners' motion.

■ Conceding that it is not the function of this court "to probe the mental processes" of the Commissioner, Morgan v. United States, 304 U.S. 1, 18, 58 S.Ct. 773, 82 L.Ed. 1129 (1938) (*Morgan II*), petitioners insist they are entitled to probe whether he exercised his own mental processes at all. More particularly, they claim they are entitled to do this in a situation where two unusual and indisputable facts, namely, the short time between Commissioner Schmidt's assumption of office and his signing of the regulations here at issue, and the large number of other rules promulgated by him in the interval, create

more than ordinary basis for doubt as to the extent of his personal reading and consideration.

It is plain enough that if this motion had come before us in the period between the first *Morgan* case, Morgan v. United States, 298 U.S. 468, 481, 56 S. Ct. 906, 912, 80 L.Ed. 1288 (1936), holding that in administrative proceedings "The one who decides must hear" and that a court seized of a review proceeding must inquire whether he had, and the fourth and last appearance of the *Morgan* case in the Supreme Court, United States v. Morgan, 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941), we would have been obliged to grant it. But the life of this aspect of *Morgan I* was extremely brief. In *Morgan IV* Mr. Justice Frankfurter, writing for a Court unanimous on this point,[4] took back most or all of what the first decision had given, 313 U.S. at 421–422, 61 S.Ct. 999. *Morgan IV* dealt with a proceeding wherein the Secretary of Agriculture had fixed rates for the Kansas City stockyards that would govern distribution of funds impounded during the long pendency of the litigation. Upon a challenge to the extent of the Secretary's participation in the making of these rates similar to that which had been made in *Morgan I*, the district court had taken his testimony as the Court had directed in *Morgan I*. After strongly suggesting that it would reject on the merits a challenge with respect to the degree of the Secretary's personal consideration, the Court went on to hold: "But the short of the business is that the Secretary should never have been subjected to this examination." 313 U. S. at 422, 61 S.Ct. at 1004. Professor Kenneth Culp Davis has correctly characterized this, 2 Administrative Law Treatise § 11.05, at 59 (1958), as a re-

---

3. Indeed evidence was taken before a court of three judges in Morgan v. United States, 23 F.Supp. 380 (W.D.Mo.1937), after the remand in 298 U.S. 468 (1936), on which petitioners so heavily rely. It was done so again in the proceeding leading to *Morgan IV, see* 32 F.Supp. 546 (W.D.Mo.1940).

4. Mr. Justice Roberts dissented on another issue. Chief Justice Hughes, the author of *Morgan I*, concurred in Mr. Justice Frankfurter's opinion.

turn to the law declared in De Cambra v. Rogers, 189 U.S. 119, 122, 23 S.Ct. 519, 521, 47 L.Ed. 734 (1903):

> It is hardly necessary to say that when a decision has been made by the Secretary of the Interior, courts will not entertain an inquiry as to the extent of his investigation and knowledge of the points decided, or as to the methods by which he reached his determination.

Subsequent Supreme Court decisions have not detracted from the force of *Morgan IV*. Petitioners rely on United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954), *see also* Shaughnessy v. United States ex rel. Accardi, 349 U.S. 280, 75 S.Ct. 746, 99 L.Ed. 1074 (1955), but the charge there thought to require the taking of evidence was that the agency to which discretion had been given, the Board of Immigration Appeals, had acted at the dictation of the Attorney General; indeed, the case is questionable authority for the taking of testimony even on its own facts. *See* 2 Davis, *supra*, § 11.05, at 61 n. 10. They press even more strongly a portion of Mr. Justice Marshall's opinion in Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971), stating that on remand the district court "may require the administrative officials who participated in the decision to give testimony explaining their action." But *Overton Park* was a case where the Secretary of Transportation had made no formal findings; the taking of testimony, suggested as being within the range of proper action for the district court on remand, was for the purpose of ascertaining why the highway construction had been authorized, a function performed by the extensive preambles to the regulations here at issue. The Court reaffirmed *Morgan IV*, saying that where findings accompany the decision, "there must be a strong showing of bad faith or improper behavior" before testimony with regard to reasons can be taken. *Id.* Indeed, the opinion went on to say that testimony might not be required even in *Overton Park* if the Secretary could prepare *post hoc* findings sufficient to withstand scrutiny. *Id.* at 420–421, 91 S.Ct. 814. Nothing in the opinion suggests that the Court intended to allow inquiry into the relative participation of the Secretary and his subordinates.[5] Similarly, strong preliminary showings of bad faith have been required in the court of appeals cases cited by petitioners before the taking of testimony has been permitted with regard to internal agency deliberations. *See, e. g.*, Singer Sewing Machine Co. v. NLRB, 329 F.2d 200, 206–208 (4th Cir. 1964).

The facts of this case do not constitute nearly the showing of bad faith necessary to justify further inquiry; indeed they vividly illustrate the necessity of adhering to the presumption of regularity with respect to the participation of the officer authorized to sign administrative orders, especially in the context of the promulgation of legislative rules as distinguished from adjudication. As stated, the regulations here at issue are the end-product of more

---

5. The difficulties of such an inquiry are illustrated by Mr. Justice Blackmun's concurrence, 401 U.S. at 422–423, 91 S.Ct. at 827, pointing out that the case was "the end product of more than a decade of endeavor to solve the interstate highway problem at Memphis" and that the "administrative decisions under attack here are not those of a single Secretary; some were made by the present Secretary's predecessor and, before him, by the Department of Commerce's Bureau of Public Roads."

The statement in *Overton Park* that the district court could take testimony as to rea-sons was extended by Camp v. Pitts, 411 U.S. 138, 142–143, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973) (*per curiam*), arising under the National Bank Act, from cases in which the agency has made no findings to those where its "stated justification for informal action does not provide an adequate basis for judicial review." *Id.* at 138, 93 S.Ct. at 1242. But *Pitts* no more than *Overton Park* suggests that inquiry will be permitted into relative participation in the decision by various agency personnel.

than a decade of work by the FDA. Petitioners do not contest that predecessors of Commissioner Schmidt, notably Commissioner Edwards, took an active part in the development of the regulations. All would have been well, apparently, if Commissioner Edwards had continued to serve. But because he resigned in April 1973 and Commissioner Schmidt did not take office until mid-July, promulgation must wait until the new Commissioner could personally familiarize himself with 1,000 pages of formal exceptions, 20,000 letters, and the staff's views about them, and read the relevant portions of the record (or summaries of them). And the same must be true of all the other regulations awaiting the new Commissioner's signature. With the enormous increase in delegation of lawmaking power which Congress has been obliged to make to agencies, both independent and in the executive branch, and in the complexity of life, government would become impossible if courts were to insist on anything of the sort. It would suffice under the circumstances that Commissioner Schmidt considered the summaries of the objections and of the answers contained in the elaborate preambles and conferred with his staff about them. There is no reason why he could not have done this even in the limited time available, cf. Twin City Milk Producers Ass'n v. McNutt, 122 F.2d 564, 568–569 (8 Cir. 1941); Florida Economic Advisory Council v. F.P.C., 102 U.S.App.D.C. 152, 251 F.2d 643, 648 (1957) (Burger, J.), cert. denied, 356 U.S. 959, 78 S.Ct. 996, 2 L.Ed.2d 1066 (1958), although we do not envy him the task.[6] In any event, absent the most powerful preliminary showing to the contrary, effective government requires us to presume that he did. It was his special insight into the workings of the administrative process, as it was and might become, that enabled Mr. Justice Frankfurter in *Morgan IV* to persuade the Court to retreat from *Morgan I*.[7] This is no time for an attempt to regain territory so wisely yielded.

The motion to take the testimony of the Commissioner and to have other discovery, or for the appointment of a master, is denied.

**6.** It should be noted that the demands on the Commissioner's time during the 13 days preceding the signing of these orders are somewhat exaggerated by the observation, stressed by petitioners and mentioned above, that in that period he signed and caused to be published 14 final regulations, 13 proposed regulations, and 6 notices. Although 21 U.S.C. § 371, for example, speaks in terms of action by the Secretary (and by delegation the Commissioner, 21 C.F.R. §§ 2.68–2.98) throughout the process of proposal and promulgation of many types of regulations with respect to food and drugs, nevertheless whatever remains of the *Morgan I* requirement that "The one who decides must hear" surely applies to the one who *ultimately* decides. Compare Opp Cotton Mills, Inc. v. Administrator, 312 U.S. 126, 152–153, 61 S.Ct. 524, 85 L.Ed. 624, modified, 312 U.S. 657, 61 S.Ct. 524, 85 L.Ed. 624 (1941).

A spot check of the published items other than final regulations signed by Commissioner Schmidt between July 12 and July 25, 1973 reveals only the most limited assertions of a personal role. *See, e. g.,* Filled Milk Products: Proposed Common or Usual Name, dated July 25, 1973, 38 F.R. 20748–49; Ophthalmic Drugs Advisory Committee: Notice of Meeting, dated July 18, 1973, 38 F.R. 19850–51.

**7.** Very shortly after *Morgan I*, a perceptive commentator had pointed out that, despite its seeming "so eminently reasonable on its face," the decision probably would require the Secretary of Agriculture "to devote all his time to the conduct of matters which must be considered petty from a national viewpoint." A. H. Feller, Prospectus for the Further Study of Federal Administrative Law, 47 Yale L.J. 647, 662 (1938).