**BOISE CASCADE CORPORATION,
Plaintiff,**

v.

**FEDERAL TRADE COMMISSION,
Defendant.**

**Civ. A. No. 80–305.**

United States District Court,
D. Delaware.

Sept. 30, 1980.

Stay denied, D.C., 498 F.Supp. 782.

**776**

R. Franklin Belotti, of Richards, Layton & Finger, Wilmington, Del., for plaintiff; John T. Loughlin, Victor E. Grimm, William R. Carney, and Scott M. Mendel, of Bell, Boyd, Lloyd, Haddad & Burns, Chicago, Ill., David R. Almond, of Boise Cascade Corporation, Boise, Idaho, of counsel.

James W. Garvin, Jr., U. S. Atty., John X. Denney, Jr., Asst. U. S. Atty., Wilmington, Del., for defendant; James N. Sneed, Acting Gen. Counsel; W. Dennis Cross, Asst. Gen. Counsel; Edward F. Glynn, Jr., Atty., F.T.C., Washington, D. C., of counsel.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

This action raises the important, though narrow question whether a district court should review an agency's issuance of an administrative complaint, prior to appeal of a final decision in the agency proceeding. Plaintiff, Boise Cascade Corporation ("Boise"), alleges that the defendant, Federal Trade Commission ("FTC"), violated statutory and constitutional limitations on its authority in issuing a complaint against Boise. Boise seeks declaratory and injunctive relief at the inception of the FTC proceeding. The FTC, in turn, has moved that the Court vacate a stay of the pending proceeding, and that Boise's action be dismissed.

## I. Factual Background

Nearly five years ago, FTC staff undertook an investigation into allegations that Boise was receiving unjustified price discounts from its suppliers, in violation of § 2(f) of the Clayton Act, as amended, 15 U.S.C. § 13(f) (§ 2(f) of the Robinson–Patman Act), and § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45. In March, 1979, the Commission, by a vote of three to two, rejected a staff recommendation that a complaint be issued against Boise. The Commission referred the matter back to the staff, which brought it before the Commission again in April, 1980. In the interim, one of the Commissioners who had opposed issuance of the complaint had left the Commission. On reconsideration, the Commission decided, three votes to two, to issue a complaint against Boise. The Commission directed the Administrative Law Judge who would hear the case to admit evidence and make findings under two different standards of liability. An FTC Press Release explained that this procedure was adopted "to help the Commission decide which of two different legal standards to apply in this case." See FTC News (April 30, 1980) at 1.

The two standards referred to were set out in previous decisions of the Commission, *Doubleday & Co., Inc.*, 52 F.T.C. 169, 209 (1955) and *Mueller Co.*, 60 F.T.C. 120, 127 (1962), aff'd, 323 F.2d 44 (7th Cir. 1963). Both cases involved alleged violations of § 2(a) of the Clayton Act. In *Doubleday*, the F.T.C. held that a "dual distributor," a dealer who sells to consumers as well as to retailers, can permissibly receive a wholesale discount from his supplier that reflects the costs of the distributional services that the dealer performs for the seller. Subsequently, in the *Mueller* case, the F.T.C. explicitly overruled the *Doubleday* doctrine. See 60 F.T.C. at 127. Under the *Mueller* doctrine, any discount that the dual distributor receives must be justified on some other basis, either in terms of the supplier's

cost savings in dealing with the dual distributor (as compared with other retailers), or in terms of one of the other justifications set out in the statute, see 15 U.S.C. § 13(a). The simple difference between the *Doubleday* and *Mueller* rules is that the former allowed an additional justification for price discrimination that the latter does not allow, a defense based on the cost of distributional services provided by the dealer.

In May, 1980, after the Administrative Law Judge directed Boise to answer the FTC's complaint, Boise filed an action against the FTC in the United States District Court for the District of Idaho, seeking declaratory and injunctive relief. In its complaint, Boise alleged that the FTC had violated, *inter alia*, Article I of the United States Constitution; the Fifth Amendment to the Constitution; the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*; and the Federal Trade Commission Act, 15 U.S.C. § 41 *et seq.*

A hearing on Boise's motion for a preliminary injunction was held in early June. The Court sustained the FTC's objection that venue in Idaho was improper under 28 U.S.C. § 1391(e). In its Order of June 11, 1980, the Court ordered that the action be transferred to the District of Delaware, and stayed the FTC proceeding against Boise "pending further order" by this Court. The Administrative Law Judge stated that Boise would be required to file its answer in the proceeding within ten days once the stay was vacated, whereupon the FTC moved to vacate the stay. This Court took no action on the motion to vacate, allowing the stay to remain in effect pending its ruling on the motion for a preliminary injunction and the motion to dismiss.

## II. Availability of Judicial Review

The Court has jurisdiction in this case under 28 U.S.C. §§ 1331 and 1337. Before reaching the merits of Boise's allegations, the Court must first determine whether it should exercise its jurisdiction at this stage of the administrative proceeding.

■ Clearly a party cannot obtain district court review of agency action if review is explicitly or implicitly foreclosed by statute. See 5 U.S.C. § 701(a)(1). Whereas "cease and desist" orders issued by the agency are appealable to the appropriate court of appeals, see 15 U.S.C. § 45(c), nothing in the Federal Trade Commission Act suggests that courts of appeals have exclusive jurisdiction over agency actions prior to the issuance of a cease and desist order. Thus, there is no statutory bar to review at this stage. See E. I. du Pont de Nemours & Co. v. FTC, 488 F.Supp. 747, 750–51 (D.Del. 1980) (hereinafter, *Du Pont*).

### A. Exhaustion of Remedies

■ A more serious obstacle is the doctrine of exhaustion of administrative remedies, "the long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938). In order to determine how this doctrine applies in a specific case, it is necessary to look to its underlying aims. See *McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969). There are several rationales for this rule: it allows agencies to apply their expertise in developing the factual background for decisions; it aids efficiency by minimizing interruptions of agency proceedings; it allows agencies to correct their own errors prior to judicial intervention, thereby preserving agency autonomy and conserving judicial resources; and it encourages a conscientious regard for agency procedures among participants in the administrative process. See *id.* at 193–95, 89 S.Ct. at 1662–63. See generally L. Jaffe, *Judicial Control of Administrative Action* 424–58 (1965).

As is often the case with judge–made rules, exceptions must be made under certain circumstances. In this Circuit, two exceptions to the exhaustion doctrine have been recognized: "1) when the administrative procedure is clearly shown to be inadequate to prevent irreparable injury; or 2) when there is a clear and unambiguous

statutory or constitutional violation." *First Jersey Securities, Inc. v. Bergen*, 605 F.2d 690, 696 (3d Cir. 1979), *cert. denied*, 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980) (hereinafter, *First Jersey Securities*).

It is undisputed that Boise has not exhausted its administrative remedies in this case. The statutory scheme provides for a hearing to be held after the FTC issues a complaint, whereas the Boise hearing has not begun. At the conclusion of a hearing, the Administrative Law Judge renders a decision, and his decision can be appealed to the full Commission. *See* 16 C.F.R. § 3.51–.52 (1979). In the event of an adverse decision by the Commission, the Commission's order can be appealed directly to the appropriate court of appeals. *See* 15 U.S.C. § 45(c).

Plaintiff Boise contends that it comes within both of the exceptions of the exhaustion doctrine and that the Court should therefore undertake to review the FTC's actions prior to the conclusion of the agency proceeding. First, Boise claims that it will suffer irreparable harm from participating in the FTC proceeding, as a result of the anticipated expense and the alleged unconstitutional and *ultra vires* character of the proceeding. It is well settled that litigation costs alone do not constitute "irreparable harm." *See, e. g., Barnes v. Chatterton*, 515 F.2d 916, 921 (3d Cir. 1975). Given that administrative proceedings generally involve expense and delay, the mere allegation that proceedings are unconstitutional or *ultra vires* cannot satisfy the "irreparable harm" test, for otherwise the first exception to the exhaustion doctrine would swallow up the general rule. Claims of burdensome litigation expense, combined with merely colorable claims that an agency is acting *ultra vires* or unconstitutionally, do not establish irreparable injury, and are insufficient to trigger judicial intervention

prior to exhaustion of administrative remedies. *See, e. g., Petroleum Exploration, Inc. v. Public Service Commission*, 304 U.S. 209, 220–23, 58 S.Ct. 834, 840–841, 82 L.Ed. 1294 (1938); *Barnes v. Chatterton*, 515 F.2d 916, 921 (3d Cir. 1975). The Court concludes that Boise will suffer no irreparable harm if the administrative hearing is allowed to proceed, and that Boise does not come within the first exception to the exhaustion requirement.

Under the second exception to the rule, a party can obtain judicial review of agency action before exhausting the prescribed remedies in the event of a "clear and unambiguous statutory or constitutional violation" by the agency. Boise alleges a number of statutory and constitutional defects in connection with the FTC's issuance of the complaint. Specifically, Boise claims that the FTC violated the Federal Trade Commission Act; the Administrative Procedure Act; the FTC's provisional funding statute; the Fifth Amendment guarantee of due process; and the constitutional prohibition against *ex post facto* laws. These allegations will each be considered in turn, solely to determine whether the agency has committed any "clear and unambiguous" violations that would justify judicial intervention at this stage of the proceeding.

### 1. Alleged Statutory Violations

Boise claims first that the Commission either failed to make the "reason to believe" determination required by the FTC Act, 15 U.S.C. § 45(b),[1] or prior to issuing the complaint, made its determination on the basis of insufficient evidence. Neither claim finds support in the record. Though Boise cites statements by Commissioners Pitofsky and Clanton dissenting from the FTC's decision to issue the complaint, neither dissenting statement suggests that the Commissioners in the majority failed to make the requisite "reason to believe" de-

---

1. Section 45(b) provides,

    Whenever the Commission shall have reason to believe that any such person, partnership, or corporation has been or is using any unfair method of competition or unfair or deceptive act or practice in commerce, and if

it shall appear to the Commission that a proceeding by it in respect thereof would be to the interest of the public, it shall issue and serve upon such person, partnership, or corporation a complaint stating its charges in that respect . . . .

termination, or that there was insufficient evidence in the record to support a complaint under the *Mueller* rule.[2] The disagreement between the majority and the dissenters concerned only whether the *Mueller* rule was preferable to *Doubleday* on policy grounds. Boise's allegations do not make out a "clear and unambiguous" violation by the agency.

This case differs on its facts from *Standard Oil Co. of California v. FTC*, 596 F.2d 1381 (9th Cir. 1979), *cert. granted*, 445 U.S. 903, 100 S.Ct. 1077, 62 L.Ed.2d 318 (1980) (hereinafter, *SOCAL*). In the *SOCAL* case, the Ninth Circuit overturned the lower court's dismissal of an action seeking judicial review, upon the FTC's issuance of a complaint, of whether the FTC had made the necessary "reason to believe" determination. The FTC had issued a complaint a few days after the Chairman stated that the Commissioners had neither read nor approved the staff report on which the complaint was purportedly based, *see* 596 F.2d at 1383–84, so that there was some basis in the record for an inference that the Commission had not made a "reason to believe" determination.

■■■■ Moreover, this Court disagrees with the Ninth Circuit's view that it is possible to assess whether the Commission made a "reason to believe" determination without impermissibly inquiring into the Commissioners' mental processes. Given that an agency has full discretion in deciding what information is relevant, and what evidence is sufficient for a "reason to believe" determination,[3] the Court cannot infer from the timing of a decision, or other circumstantial evidence, whether the Commissioners made a determination on the basis of evidence they deemed relevant. The only means of deciding whether they in fact did so is to probe their mental processes, a practice condemned by the Supreme Court

in *United States v. Morgan*, 313 U.S. 409, 422, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941). *See generally* Nathanson, *Probing the Mind of the Administrator*, 75 Colum.L.Rev. 721 (1975).

■■■■ In the absence of strong facial indications of bad faith, *see, e. g., Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971) (failure to make findings required by statute), circumstantial evidence is insufficient to overcome the presumption that an official has behaved properly. *See National Nutritional Foods Ass'n v. FDA*, 491 F.2d 1141, 1144–45 (2d Cir.), *cert. denied*, 419 U.S. 874, 95 S.Ct. 135, 42 L.Ed.2d 113 (1974). The Court finds that such indications are absent in this case, and that it will therefore not inquire into the agency's "reason to believe" determination.

■■■■ Boise raises a "legal impossibility" objection to the FTC complaint on the grounds of the Clayton Act's *scienter* requirement. Under § 2(f) of the Act, 15 U.S.C. § 13(f), it is illegal for "any person engaged in commerce ... knowingly to induce or receive a discrimination in price which is prohibited by this section." Boise contends that the FTC could not have made a "reason to believe" determination that Boise knowingly received a prohibited discount, because the FTC had not determined the applicable legal standard. However, the fact that the FTC may decide to change the legal standard as a result of the Boise proceeding provides no support for the claim that no fixed standard was in force at the time that the complaint was issued. Whether or not Boise had the necessary *scienter* is an issue for trial in the administrative proceeding; this Court cannot hold as a matter of law that Boise lacked the *scienter* necessary for liability under § 2(f).

---

**2.** Commissioner Pitofsky stated explicitly that he believes the majority to be proceeding on a *Mueller* theory. *See* Dissenting Statement of Commissioner Robert Pitofsky (April 23, 1980) at 10.

**3.** This Court agrees with the Ninth Circuit that the agency's "reason to believe" determination is "committed to agency discretion," *see* 5 U.S.C. § 701(a)(2), and is therefore not reviewable. *See* 596 F.2d at 1385.

Boise also alleges that the FTC seeks to make a "rule" [4] in the proceeding against Boise, and has violated the Administrative Procedure Act ("APA") by resorting to adjudicatory rather than rulemaking procedures to do so. *Compare* 5 U.S.C. § 553 (rulemaking) *with id.* §§ 554, 556, 557 (adjudication). Boise relies on *NLRB v. Wyman–Gordon Co.*, 394 U.S. 759, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969), in arguing that the APA requires agencies to formulate policy by means of rulemaking proceedings rather than adjudications. In subsequent cases, however, the Court has explicitly refused to require agencies to rely on their rulemaking authority in developing statutory standards. *See, e. g., NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974). In *Bell Aerospace,* the Court quoted at length from its opinion in *SEC v. Chenery Corp.*, 332 U.S. 194, 203, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947): "the choice made between proceeding by general rule or by individual, *ad hoc* litigation is one that lies primarily in the informed discretion of the administrative agency." 416 U.S. at 293, 94 S.Ct. at 1771. Thus, the FTC's decision to proceed by adjudication in this case does not warrant judicial review at this juncture under the "clear violation" test set out in *First Jersey Securities.*

Finally, Boise alleges that the FTC violated congressionally–imposed restrictions in effect at the time the FTC issued its complaint against Boise. The FTC's provisional funding statute provided "[t]hat none of the funds made available ... may be used for the final promulgation of trade regulation rules ... nor to initiate any new activities." H.J.Res. 514, 96th Cong., 2d Sess., 126 *Cong.Rec.* H2202 (daily ed. Mar. 26, 1980). Boise argues that the FTC initiated a "new activity" by issuing the complaint, and thereby violated the resolution. As the resolution's legislative history clearly suggests, however, the Congress did not intend to restrict the FTC's authority to issue complaints, "so long as the FTC acts in furtherance of an existing program." [5] It is uncontroverted that the Boise investigation and complaint were part of an on–going FTC program dealing with price discrimination. Therefore, the Court holds that the FTC's issuance of the complaint did not violate the agency's funding resolution.

## 2. Alleged Constitutional Violations

Boise contends that the FTC has denied it due process of law, guaranteed under the Fifth Amendment to the United States Constitution. First, Boise claims that the lack of specificity in the FTC's complaint deprives Boise of adequate notice. In considering this allegation, the Court notes that the agency's complaint is no less specific than the "notice pleading" permitted in civil actions under Rule 8 of the Federal Rules of Civil Procedure. Discovery will be available to Boise under the FTC's Rules of Practice, *see* 16 C.F.R.

---

**4.** The APA defines a rule as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy ...." 5 U.S.C. § 551(4).

**5.** The first FTC continuing resolution for fiscal 1980, H.J.Res. 402, 96th Cong., 1st Sess., 125 *Cong.Rec.* S13778 (daily ed. Oct. 1, 1979), contained a provision identical to the one in H.J. Res. 514 prohibiting FTC initiation of "new activities." *Id.* at 13779. In the floor debate on H.J.Res. 402, Senator Weicker and Senator Magnuson, Chairman of the Senate Appropriations Committee, engaged in the following colloquy concerning the provision:

Mr. Magnuson. The restriction in the resolution would not bar, or otherwise affect, any new FTC law enforcement investigation if the investigation were part of an existing program.

Mr. Weicker. Similarly, I understand that the committee intends not to restrict in any way the FTC's authority to issue complaints or to seek injunctions. Is that correct?

Mr. Magnuson. The Senator is correct, so long as the FTC acts in furtherance of an existing program.

*Id.* at 13780.

Both the House and Senate Committee Reports make clear that the intent of the restriction is to prevent the agency from "[delving] into new program areas." *See* H.R.Rep. No. 96–609, 96th Cong., 1st Sess. 3 (1979); *S.Rep. No.* 96–332, 96th Cong., 1st Sess. 3 (1979).

§ 3.31–.38 (1979), and will enable Boise to determine the agency's theory of the case. Therefore, the notice given Boise is not clearly deficient.

▇▇ Second, Boise alleges that the FTC's failure to specify a legal standard for the proceeding, and the Order to the Administrative Law Judge to admit evidence relevant under two different standards, constitutes a denial of due process. Boise fails to suggest how a change in the legal standard would work to its detriment, however. Insofar as *Mueller* explicitly overruled *Doubleday, Mueller* must be deemed the prevailing standard; there is no denial of due process if the FTC prosecutes Boise on a *Mueller* theory. If, on the other hand, the FTC decides to readopt the *Doubleday* rule, then the FTC is allowing Boise a defense not permitted under *Mueller*. Such a change would work in Boise's favor, for conduct which was illegal at the time committed would be treated as legal. This would be the reverse of a case involving an *ex post facto* law, where a party is charged with illegal conduct though his acts were legal at the time of commission. The agency's action in this case is not a "clear violation" of either Boise's right to due process nor the constitutional prohibition against *ex post facto* laws, *U.S.Const.* art. I, § 9, cl. 3.

▇▇ Finally, Boise alleges a number of threatened injuries that it anticipates in the proceeding. It contends: a) that one of the Commissioners has prejudged the case, thus making impossible a fair hearing on appeal; b) that the Administrative Law Judge may misallocate the burden of proof with respect to several issues; and c) that Boise

may be unable to obtain information necessary to its defense unless the sellers alleged to have given the illegal discounts are named as parties. None of these claims is ripe for review, for they concern "hypothetical threats" rather than actual injuries, *see United Public Workers v. Mitchell*, 330 U.S. 75, 89–91, 67 S.Ct. 556, 564–565, 91 L.Ed. 754 (1947). None involves "an administrative decision [that] has been formalized and its effects felt in a concrete way," *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). These claims can be raised on appeal of the final agency ruling, *see* 5 U.S.C. § 704.

▇▇ In conclusion, the agency has committed no clear statutory or constitutional violations that would justify judicial intervention prior to the conclusion of the administrative proceeding.[6] Therefore, neither exception to the exhaustion doctrine applies.

## B. Finality of the Agency Action

▇▇▇ The agency action at issue here must also satisfy the APA's "finality" requirement in order to be reviewable by this Court. The APA specifies two kinds of agency action for which judicial review is available: "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704.[7] Though the issues of exhaustion and finality are closely related, the finality requirement warrants separate analysis. Courts have disagreed as to whether issuance of a complaint by the FTC constitutes "final agency action" for purposes of judicial review. *Compare SOCAL, supra*, at 1387 (issuance of complaint held "final action"), *with Du Pont, supra*, at

6. This case is plainly distinguishable from *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), in which the Supreme Court held that an NLRB action, though not a "final order," was subject to judicial review. The National Labor Relations Act provides that the NLRB shall not approve any bargaining unit that includes both professional and non–professional employees, except upon a majority vote of the professional employees. 29 U.S.C. § 159(b)(1). The Board certified a "mixed" unit without first holding an election. Though the Court had previously held that a certification order was not a "final order," it held that the

district court had jurisdiction to review the action because the Board had acted "contrary to a specific prohibition in the [National Labor Relations] Act." 358 U.S. at 188, 79 S.Ct. at 184. In this case, nothing in the FTC's action violated the Constitution or the applicable statutes on their face.

7. Section 704 further states that "[a] preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action."

753 n. 12 (held not "final action"). In the *SOCAL* case, the Ninth Circuit held the allegedly unlawful issuance of a complaint to be final agency action in order that the alleged unlawfulness not be insulated from review. This argument, which would read the word "final" out of § 704, proves too much. All preliminary and procedural agency rulings in a proceeding are "insulated from review" if the final agency decision is not adverse to the private party. Moreover, courts must take "due account" of "the rule of prejudicial error" in their review of agency action, 5 U.S.C. § 706; non–prejudicial rulings are insulated from review even if the final agency decision is adverse. The framers of the APA thus did not intend for rulings to be deemed "final agency action" simply because they might otherwise escape judicial review.

The proper test of finality for an agency action should not be whether judicial review will subsequently be available, but whether granting review will frustrate the aims of the doctrine of exhaustion of remedies. This approach to finality comports with the APA's legislative history, for the judicial review provisions of the APA were intended to codify existing practice in the field. *See Attorney–General's Manual on the Administrative Procedure Act* 101 (1947). Moreover, it construes the finality requirement "pragmatically," as the Supreme Court has directed. *See Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). Applying this approach to the case at hand, it is clear that the policies of preserving the autonomy of the administrative process and conserving judicial resources would both be served by delaying judicial intervention un-

til the agency makes its ruling on the merits. Given the absence of irreparable harm, and of plain statutory or constitutional defects, the FTC's issuance of the complaint should be deemed "preliminary" rather than "final" agency action for purposes of judicial review.[8]

The Court, therefore, declines to exercise its jurisdiction, on the grounds that Boise has failed to exhaust its administrative remedies, that none of the exceptions to the exhaustion rule apply, and that the action complained of is not "final agency action" under the APA.[9] The motion to dismiss and the motion to vacate the stay are granted; the motion for a preliminary injunction is denied. The foregoing Opinion is adopted as the Court's Findings of Fact and Conclusions of Law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

---

**8.** This conclusion finds support in the legislative history of § 704. In commenting on that section, the *Attorney–General's Manual on the Administrative Procedure Act* states, "[f]or example, intermediate orders *such as orders setting matters for hearing* are not reviewable either directly or collaterally, as by suits for injunction or declaratory judgment." *Id.* at 103 (emphasis added) (citations omitted).

**9.** It is an unsettled issue in this Circuit whether a plaintiff's failure to exhaust administrative remedies deprives the district court of jurisdiction over a suit for injunctive relief against an

agency, or whether the district court simply declines to exercise its jurisdiction in such circumstances. *Compare Susquehanna Valley Alliance v. Three Mile Island Nuclear Reactor,* 619 F.2d 231, 245 (3d Cir. 1980) (rule of exhaustion of remedies does not bear upon subject matter jurisdiction), *with First Jersey Securities, supra* at 700 (failure to exhaust remedies deprives district court of subject matter jurisdiction). Whatever force this distinction might have in other cases, the effect of a lack of jurisdiction or a refusal to exercise jurisdiction is the same in this case.