James **LOGAN** et al.

v.

**Mehadin K. ARAFEH** et al.

**Civ. No. 14386.**

United States District Court,
D. Connecticut.

June 29, 1972.

As Amended on Denial of Rehearing
Sept. 13, 1972.

Daniel Oran, Robert G. Fracasso, Legal Aid, New Britain, Conn., for plaintiffs.

Francis J. MacGregor, Asst. Atty. Gen., East Hartford, Conn., for defendants.

Before SMITH, Circuit Judge, and BLUMENFELD and CLARIE, District Judges.

## MEMORANDUM OF DECISION
### FINDINGS OF FACT and
### CONCLUSIONS OF LAW

BLUMENFELD, District Judge:

The plaintiffs, who are or at one time were involuntary patients at the Connecticut Valley Hospital in Middletown, Connecticut,[1] seek a declaratory judg-

---

1. The plaintiffs originally sought to sue on behalf of themselves and others similarly situated and requested that they be allowed to maintain the instant action as a class suit pursuant to Fed.R.Civ.P. 23(b). Subsequently, however, plaintiffs' counsel withdrew this request in light of a representation by defendants' counsel that a judgment in favor of the plaintiffs would be considered binding with respect to commitment procedures at all state hospitals for the mentally ill.

ment that Conn.Gen.Stats. § 17–183, as amended by 1971 Public Act No. 760, the "emergency" civil commitment statute, and Conn.Gen.Stats. § 17–178, as amended by 1971 Public Act No. 760, the "probate" commitment statute, are unconstitutional and a preliminary and permanent injunction enjoining their enforcement.

The defendant Mehadin K. Arafeh is sued individually and in his official capacity as Superintendent of the Connecticut Valley Hospital; defendant Ernest Shepard is sued individually and in his official capacity as Commissioner of Mental Health of the State of Connecticut; and defendant Walter P. Staniszewski is sued individually and in his official capacity as Judge of the probate court for Middlesex County.

Jurisdiction is properly asserted under 42 U.S.C. § 1983 and 28 U.S.C. § 1343. Since the complaint draws into question the constitutionality of state statutes, a three judge district court was convened pursuant to 28 U.S.C. §§ 2281 and 2284.

## I.

### Emergency Commitment

The plaintiffs first attack as unconstitutional the emergency commitment statute, Conn.Gen.Stats. § 17–183, as amended, which provides for the involuntary commitment of a person to a hospital for mental illness if a physician certifies that he "is a danger to himself or others" as a result of mental illness. The plaintiffs claim that § 17–183 is violative of the due process clause of the fourteenth amendment primarily on the ground that it authorizes confinement without prior notice and hearing and that the provision for an automatic post-commitment judicial review of the validity of confinement is unreasonably postponed.[2]

Section 17–183 authorizes the emergency commitment of a person to a hospital for mental illness for not more than fifteen days without prior notice or hearing. If a patient committed to such a hospital under § 17–183 is unwilling to remain voluntarily he must be released unless formal commitment proceedings are instituted against him within fifteen days in the probate court pursuant to § 17–178. On the timely commencement of such proceedings, confinement may be continued for an additional thirty days without further court order.[3] Under those proceedings, the patient is afforded a number of due process safeguards. These include reasonable notice to the patient "and to such relative or relatives and friends as . . . (deemed) advisable," a judicial hearing to determine whether the patient should be committed under § 17–178, and the compulsory attendance at this hearing of the patient who has the right to be represented by counsel and the right to present witnesses in his own behalf and to cross-examine adverse witnesses.[4] In short, if a

2. The plaintiffs also claim that § 17–183 is violative of the equal protection clause of the fourteenth amendment, but they did not press this claim. In any event, their equal protection claim is clearly without merit and does not warrant discussion.

3. Section 17–183 provides:
"Any person . . . who, the physician finds, is a danger to himself or others . . . may be confined in . . . a hospital . . . for not more than fifteen days without order of any court, provided, if a written complaint for commitment of such person has been filed in a probate court prior to the expiration of such fifteen days, such confinement shall be continued un-

der the emergency certificate for an additional thirty days, without further order, not more than forty-five days in all, until the completion of the probate court proceedings . . . ."
Section 17–178 provides:
"Upon such complaint being filed in the probate court, such court shall assign a time, not later than ten days thereafter, and a place for hearing such complaint . . . ."

4. Section 17–178 provides:
"(S)uch person (alleged to be subject to commitment under 17–178) shall not be prevented from having all reasonable opportunities to consult counsel and friends and to prepare and make his defense . . . . If the court finds

patient committed under § 17–183 is confined more than fifteen days, there must be a judicial determination of the validity of his confinement within no more than forty-five days from the date of his initial commitment.

■ Due process "is an elusive concept," the content of which "varies according to specific factual contexts." Hannah v. Larche, 363 U.S. 420, 442, 80 S.Ct. 1502, 1514, 4 L.Ed.2d 1307 (1960); see Goldberg v. Kelly, 397 U.S. 254, 263, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Fhagen v. Miller, 29 N.Y.2d 348, 328 N.Y.S.2d 393, 396, 278 N.E.2d 615 (1972).

"(C)onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as the private interest that has been affected by governmental action." Cafeteria and Restaurant Workers Union, Local 473, AFL–CIO v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961).

The emergency commitment to a hospital for mental illness on a temporary basis of a person on the finding of a physician that he is a danger to himself or others without prior notice and hearing does not offend the due process clause provided there is available to him an adequate means of testing the validity of his confinement within a reasonable period of time. Fhagen v. Miller, 306 F. Supp. 634, 638 (S.D.N.Y.1969); Fhagen v. Miller, *supra*, 328 N.Y.S.2d at 396, 278 N.E.2d at 617; In re Coates, 9 N.Y.2d 242, 249, 213 N.Y.S.2d 74, 79, 173 N.E. 2d 797, 801 (1961); see also, Anderson v. Solomon, 315 F.Supp. 1192, 1194 (D. Md.1970). That is the case here.

The constitutional challenge directed against the period of emergency confinement authorized by § 17–183 without notice and hearing and before judicial review would appear to be adequately overcome by the provision for notice and judicial review before an order of commitment can become final.

*The Time Allowed*

■ One aspect of § 17–183 which has been signaled out as constitutionally objectionable is the fact that under the provisions of this statute a person who is certified by a physician to be a "danger to himself or others" may remain confined for as long as forty-five days before a judicial determination of the validity of his confinement. The plaintiffs contend that forty-five days is outside the limits of what is reasonable. Confinement for forty-five days before that determination is not so baseless as to be unconstitutional. There is a reasonable connection between the time allowed and the objective sought.

Testimony received from expert witnesses [5] established that the fifteen

---

such person is unable to pay for counsel, the court shall appoint counsel for him, the reasonable compensation of such counsel to be established by the court and paid from the fund established under section 45–4h. Such person or his counsel shall be afforded access to any records which are to be used in the hearing. In addition to oral testimony offered at such hearing, the court shall require the sworn certificates of at least two reputable physicians selected by the court, one of whom shall be a practicing psychiatrist . . . to the effect that they have personally examined such person within ten days of such hearing and that in their opinion such person is mentally ill and a fit subject for confinement in a hospital for mental illness. If such person notifies the court not less than three days before the hearing that he wishes to cross-examine the committing physicians, the court shall order such physicians to appear. The court shall cause a recording of the testimony of such hearing to be made, to be transcribed only in the event of an appeal from the decree rendered hereunder. A copy of such transcript shall be furnished without charge, to any appellant whom the court of probate finds unable to pay for the same."

5. There is no question of fact here, but rather the legal issue of the constitutionality of § 17–178. The evidence taken bears on whether there is a sufficiently rational basis for the statute to meet the constitutional requirement of due process.

day leeway after initial commitment before judicial proceedings must be begun is not simply for the purpose of delay. It has a positive aspect as well. There is a compensating advantage to the committed person because in many cases during this period the medical staff at the hospital can adequately alleviate his mental illness or by use of non-emergency diagnostic procedures determine that he is not a "danger to himself or others." In such cases, the stigma of court record is avoided and the length of confinement is shortened. It must be remembered that commitment has not been undertaken for the sake of penal detention. The patient is committed for treatment and care,[6] and some knowledge of his mental condition can be gained by visual observation and diagnostic tests. This takes time. On the other hand, where a full blown court trial must be had pursuant to § 17–178, additional time to undertake more elaborate testing of the patient's mental condition, and a more detailed probe into his relevant history, by both the hospital authorities and the expert witnesses who will testify in behalf of the patient is needed.[7]

While it is possible that all of this could be concentrated into a shorter period of time, we are satisfied that the time which is allowed by the statute is not so unreasonably long as to amount to a denial of due process. The time provisions set by the legislature are fully supported by the opinions of competent physicians specializing in the treatment and care of persons suffering from mental illness. We hold that there is a rational basis for the time allowed by the statute.

Furthermore, in addition to those proceedings which the state is compelled to initiate against the committed person in order to extend his confinement beyond a temporary fifteen day period, he may, on his own initiative, challenge the legality of his confinement at any time during the period of his confinement through a habeas corpus proceeding in the state courts. See Mayock v. Martin, 157 Conn. 56, 245 A.2d 574 (1968). In this regard, it should be noted that such a proceeding is privileged with respect to assignment for trial. Connecticut Practice Book § 213(10). The plaintiffs contend that as a practical matter this remedy is unavailable because there is no statute or administrative regulation which specifically provides that a patient committed under § 17–183 be informed of the availability of habeas corpus as a remedy for illegal confinement and that he be assisted in filing a habeas corpus petition if he so desires. A statute or regulation providing that a person committed under an emergency certificate be given prompt notice of the right to seek habeas corpus relief would certainly be both desirable and feasible, compare regulations adopted under New York's Mental Hygiene Law; Fhagen v. Miller, supra, 328 N.Y.S.2d at 397, 278 N.E.2d at 618, but we do not regard them as constitutionally required. While a patient committed under § 17–183 has been certified by a physician to be a danger to himself or others as a result of mental illness, it does not follow that he is incapable of availing himself of the habeas corpus remedy. As Judge Smith stated in Winters v. Miller, 446 F.2d 65, 68 (2d Cir.1971), "a finding of 'mental illness' even by a judge or jury, and commitment to a hospital, does not raise even a presumption that the patient is 'incompetent' or unable adequately to manage his own affairs." And in the case of a

---

6. As defined in Conn.Gen.Stats. § 17–176 a " 'hospital for mental illness' means any . . . place in which any mentally ill . . . person is received or detained as a patient . . . ." In Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), a penal commitment was distinguished

as one which did not purport to provide for or require medical treatment.

7. The procedural safeguards required by § 17–178 include examination by two impartial physicians, one of whom shall be a practicing psychiatrist, who are not always readily obtainable. See footnote 4, *supra* at 1267.

person not sufficiently mentally ill to warrant hospitalization, there is even less reason to expect that he is not capable of understanding his situation.

After an initial emergency commitment authorized by § 17–183, the proceedings required to be instituted thereafter for continuation of commitment under § 17–178 calling for a judicial decision after receiving evidence from a general physician and a psychiatrist in an adversary hearing is fully adequate to safeguard against involuntary commitment through mistake or abuse. The plaintiffs' claim that § 17–183 does not satisfy constitutional requirements for procedural due process is without merit.

## II.

### Probate Commitment

Another constitutional challenge is leveled against Connecticut's probate commitment statute, Conn.Gen.Stats. § 17–178, as amended, on the ground that the standard for commitment under this statute is in violation of the first, fifth, eighth, ninth and fourteenth amendments to the United States Constitution.[8]

The standard for probate commitment in § 17–178 that a person be "mentally ill and a fit subject for treatment in a hospital for mental illness or that he ought to be confined," even as augmented by the definition of a mentally ill person in § 17–176 as a "person afflicted by a mental disease to such extent that he requires care and treatment for his own welfare or the welfare of others or of the community," is not literally the same as that for an emergency commitment under § 17–183, to wit: that a person be "a danger to himself or others" as a result of mental illness.

But the fact that a stricter standard is imposed on a single physician in order to obtain an emergency commitment of a person deemed by him to be "a danger to himself or others" does not demand that the same standard should be required in order to retain the patient so admitted for further hospitalization when he "requires care and treatment for his own welfare or the welfare of others or of the community." § 17–176.

### Abstention

The plaintiffs in effect argue that the language of § 17–178 is unconstitutionally vague because the term "welfare" is undefined and does not delineate in what respects it will be impaired merely because a person is mentally ill. Of course, the term "welfare" embraces a great number of interests, yet when read in the context of the entire statutory scheme, the interests to be safeguarded would seem to be no less definite than those protected by a criminal law forbidding breach of peace or disorderly conduct. Cf. United States v. Woodard, 376 F.2d 136 (7th Cir. 1967).[9]

Their express argument is that the language of § 17–178 could be construed to permit a non-violent mentally ill person to be unconstitutionally deprived of his liberty even though his mental illness poses no direct threat to the welfare of others or of the community. In terms of equal protection they point out that the statute creates a discriminatory classification, namely, mentally ill persons who are in need of care and treatment for their own welfare, the welfare of others or of the community. Since a fundamental right, the right of personal liberty, is affected, they contend that the state must demonstrate that it has a compelling interest in the commitment of such persons in order for the classifi-

8. The plaintiffs also claim that § 17–178 is deficient with respect to the requirements of procedural due process. In view, however, of the extensive procedural safeguards provided for in § 17–178, see footnote 4, *supra* at 4, this claim is so lacking in merit that it does not warrant discussion.

9. The "void for vagueness" doctrine is applicable to civil statutes as well as criminal statutes. Small Co. v. American Sugar Refining Co., 267 U.S. 233, 238–239, 45 S.Ct. 295, 69 L.Ed. 589 (1925). See Note, 109 U.Pa.L.Rev. 67, 69–70 n. 16 (1960).

cation to be upheld under the equal protection clause. We note in this regard that a constitutional challenge to the standard for commitment under a New York statute virtually indistinguishable from the statutes in question [10] was held unpersuasive by Chief Judge Fuld writing for the New York Court of Appeals in Fhagen v. Miller, *supra*, 328 N.Y.S.2d at 396–397, 278 N.E.2d at 617–618, who pointed out that the protection of society which underlies the state's power to commit mentally ill persons for care and treatment extends beyond what is necessary to prevent crimes of violence. Just how much further the state's power may be constitutionally exercised we believe should best be left to the courts of Connecticut.

There has been no authoritative interpretation of the scope of § 17–178 by the state courts and its language is susceptible to more than one construction. Although it may be that the statute can be literally read to cover mentally ill persons who pose no direct threat to the welfare of others or of the community, the Court has "repeatedly warned against the dangers of an approach to statutory construction which confines itself to the bare words of a statute, (citations omitted) for 'literalness may strangle meaning,' . . . ." Lynch v. Overholser, 369 U.S. 705, 710, 82 S.Ct. 1063, 1067, 8 L.Ed.2d 211 (1962). And as Judge Weinfeld noted in Fhagen v. Miller, *supra*, 312 F.Supp. at 326, a restrictive interpretation of the rather broad language of a standard for commitment, such as the standard at issue, would certainly eliminate any constitutional objections to the standard. Moreover, we do not have before us a specific case which calls for a delineation of the permissible constitutional reach of the statute, and we are not disposed to deal with questions in the abstract.

■ It is well established that a federal court should decline to pass on the constitutionality of a state statute where, as here, state court interpretation of the statute could eliminate or at least substantially alter the federal constitutional claims presented. See Fhagen v. Miller, *supra*, 312 F.Supp. 323; Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); England v. Louisiana State Bd. of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed. 2d 440 (1964); Harrison v. NAACP, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959); Government & Civic Employees Organizing Comm. v. Windsor, 353 U.S. 364, 77 S.Ct. 838, 1 L.Ed.2d 894 (1957). As Justice Harlan observed in Harrison v. NAACP, *supra*, 360 U.S. at 178, 79 S.Ct. at 1031:

> "(E)nactments should be exposed to state construction or limiting interpretation before the federal courts are asked to decide upon their constitutionality, so that federal judgment will be based on something that is a complete product of the State, the enactment as phrased by its legislature and as construed by its highest court."

In Mayock v. Martin, *supra*, 157 Conn. at 64, 245 A.2d at 578, the Connecticut Supreme Court, while not defining the perimeters of this standard, did demonstrate an awareness of the limitation on the authority of the state to "safeguard the peace, good order and comfort of the community, without unconstitutionally

---

10. The New York standard is stated as "afflicted with mental disease to such an extent that for his own welfare or the welfare of others, or of the community, he requires care and treatment." This standard was "enacted after extensive investigation and exhaustive study and research by members of the legal and medical professions and other public groups.

The new law, the product of these studies, sought to achieve a balanced approach to the interests of the individual and the community in the administration, treatment and hospitalization of the mentally ill . . . ." Fhagen v. Miller, 312 F.Supp. 323, 324 (S.D.N.Y.1970) (three judge district court).

invading the liberties protected by the Fourteenth Amendment."[11] Moreover, the Connecticut Supreme Court has in the past construed statutes so as to avoid doubts as to their constitutionality. See, e. g., Cedar Island Improvement Ass'n v. Clinton Elec. Light & Power Co., 142 Conn. 359, 372, 114 A.2d 535 (1955); State v. Muolo, 119 Conn. 323, 330, 176 A. 401 (1935). See also, Lynch v. Overholser, *supra*, 369 U.S. at 710, 711, 82 S.Ct. 1063, 8 L.Ed.2d 211.

Abstention in this case will also " 'avoid unnecessary and premature constitutional adjudication which might tend otherwise to create friction in federal-state relations by interference with important state functions.' " Coleman v. Ginsberg, 428 F.2d 767, 769 (2d Cir. 1970).

■ In view of the foregoing, the court abstains from passing on the merits of plaintiffs' claim that the standard for commitment under § 17–178 is unconstitutional but will retain jurisdiction until the state courts have authoritatively construed the standard or until efforts to obtain such an adjudication in a specific case have been exhausted.

### III.

A full hearing on the merits having been held, the defendants are entitled to judgment that Conn.Gen.Stats. § 17–183, as amended by Public Act No. 760 (1971), is not unconstitutional.

11. The United State Supreme Court has recently suggested how it would construe a commitment statute similar to that which the Connecticut courts will be called upon to interpret. In Jackson v. Indiana, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972), the Court discusses the involuntary civil commitment statute in Indiana, § 22–1201(1), I.C. 1971, 16–14–9–1(1) which defines a "mentally ill person as one who 'is afflicted with a psychiatric disorder which substantially impairs his mental health; and, because of such psychiatric disorder, requires care, treatment, training or detention in the interest of the welfare of such person or the welfare of others of the community in which such person resides.' "

The court withholds consideration of the claim that Conn.Gen.Stats. § 17–178, as amended by Public Act No. 760 (1971), is unconstitutional pending the outcome of state court litigation.

A "psychiatric disorder" is "any mental illness or disease, including any mental deficiency, epilepsy, alcoholism, or drug addiction." Ind.Ann.Stat. § 22–1201(2). This standard is similar to the Connecticut standard, in that both look to the "welfare" of the individual or the community in designating those subject to involuntary commitment. The Supreme Court states that the Indiana statute "appears to require an independent showing of dangerousness ('requires . . . detention in the interest of the welfare of such person or . . . others . . .)' " and that pending criminal charges of robbery lodged against the individual in question would not alone establish the dangerousness necessary for commitment. 92 S.Ct. at 1853.