Thomas D. McGOLDRICK and Arthur W. Berry, Plaintiffs,

v.

Edward I. KOCH, as Mayor of the City of New York; Robert J. McGuire, as former Commissioner of the New York City Police Department; Benjamin Ward, as Commissioner of the New York City Police Department; the New York City Police Department and the City of New York, Defendants.

No. 84 Civ. 1335 (RO).

United States District Court, S.D. New York.

April 28, 1986.

---

Richard Imbrogno, Gordon, Shechtman & Gordon, P.C., New York City, for plaintiffs.

Jonathan Pines, Asst. Corp. Counsel, New York City, for defendant City.

## MEMORANDUM AND ORDER

JAMES C. FRANCIS, IV, United States Magistrate.

This case involves a challenge to the procedure by which the plaintiffs, Thomas D. McGoldrick and Arthur W. Berry, were

dismissed from the New York City Police Department (the "Department"). The incident that caused the dismissal of the plaintiffs was an unprovoked beating of Joseph Arancibia on May 23, 1981. Affidavit of Susan D. Wagner, dated July 19, 1984, Ex. 2. Following a departmental hearing on March 9 and 10, 1983, Bruce Fogarty, the Acting Commissioner for Trials of the Department, recommended that the plaintiffs be found guilty of the charges and dismissed from service. Police Commissioner Robert J. McGuire adopted this recommendation and dismissed the plaintiffs on October 28, 1983.

The plaintiffs subsequently filed the instant action alleging, *inter alia*, that they had been deprived of their due process rights as guaranteed by the fourteenth amendment to the United States Constitution. Plaintiffs assert that they were denied a fair and impartial hearing because the departmental trial process was unduly influenced by charges of police brutality and racism that were at that time the subject of public hearings and extensive media coverage. Complaint paras. 16–24.

The instant dispute concerns the plaintiffs' efforts to depose five non-party witnesses. These deponents are Bruce Fogarty, Assistant Commissioner for Trials, who presided at the departmental hearing; William Frohne, a lieutenant in the Department who served as prosecutor in the hearing; Mark Frances, a captain in the Department who investigated Mr. Arancibia's charges against the plaintiffs; Assistant District Attorney Eileen Koretz, who assisted Mr. Arancibia in filing brutality charges and who investigated those charges for presentation to a grand jury; and Dr. Richard Izquierdo, Mr. Arancibia's uncle, who testified at the departmental hearing regarding his nephew's injuries.

The defendants have moved for a protective order precluding their depositions, primarily on the ground that they would delve impermissibly into the deliberative processes of departmental officials. Any factual information that would be discoverable, the defendants argue, is contained in the record of the departmental hearing or in investigative files disclosed to the plaintiffs. The plaintiffs reply that they have no interest in the thought processes of departmental personnel; rather, they are seeking evidence of communications among the hearing officer, the prosecutor, and other departmental employees which would show that the process was tainted by considerations of politics or public relations. Affidavit of Richard Imbrogno, dated August 20, 1984 at paras. 17–21. Because different legal principles apply to each of the proposed depositions, the witnesses will be dealt with separately.

*Bruce Fogarty*

As Acting Commissioner of Trials, Mr. Fogarty served in a quasi-judicial capacity. It is well-settled that the decision-making processes of judges are not generally subject to discovery. *United States v. Morgan,* 313 U.S. 409, 422, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941); *Fayerweather v. Ritch,* 195 U.S. 276, 306–07, 25 S.Ct. 58, 67, 49 L.Ed. 193 (1904); *Feller v. Board of Education,* 583 F.Supp. 1526, 1528 (D.Conn.1984). In order to maintain the integrity of administrative processes, courts have applied this same rule to decisions made by agency administrators. *United States v. Morgan,* 313 U.S. at 422, 61 S.Ct. at 1004; *Yaretsky v. Blum,* 629 F.2d 817, 823 (2d Cir.1980), *rev'd on other grounds,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982); *National Nutritional Foods Ass'n v. FDA,* 491 F.2d 1141, 1145 (2d Cir.1974), *cert. denied,* 420 U.S. 946, 95 S.Ct. 1326, 43 L.Ed.2d 424 (1975). Where, as here, the administrator is acting in the role of a judicial officer, the principles underlying immunity from discovery apply with full force. Nevertheless, where a party has made a *prima facie* showing that the decision by an agency or a judicial officer is tainted by impropriety, the decision-making process may be an appropriate subject of inquiry. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971); *KFC National Management Corp. v. NLRB,* 497 F.2d 298, 305 (2d Cir.1974),

*cert. denied,* 423 U.S. 1087, 96 S.Ct. 879, 47 L.Ed.2d 98 (1976); *Feller v. Board of Education,* 583 F.Supp. at 152.

■ The appropriateness of any deposition of Commissioner Fogarty depends upon whether plaintiffs have met this threshold test. Mere assertions that there was bad faith on the part of a decision-maker will not suffice. *Friends of the Shawangunks, Inc. v. Watt,* 97 F.R.D. 663, 667 (N.D.N.Y.1983); *Mobil Oil Corp. v. Lefkowitz,* 454 F.Supp. 59, 71 (S.D.N.Y. 1977). Here, plaintiffs rely in part on the general "atmosphere" of bias created by media stories and public hearings about police brutality. Moreover, the plaintiffs argue that the Department's knowledge of their innocence is further evinced by its decision not to suspend them. Such general allegations, however, will not justify intrusion into the mental processes of a hearing officer. In *Andrew v. Knowlton,* 509 F.2d 898, 906–07, *cert. denied,* 423 U.S. 873, 96 S.Ct. 142, 46 L.Ed.2d 105 (1975), the Second Circuit upheld the district court's refusal to allow depositions of members of the West Point Board of Officers despite statistical evidence showing the extreme rarity with which the Board ruled in favor of a cadet in disciplinary proceedings. Thus, in order to establish a *prima facie* case of impropriety, a party must present a more specific evidentiary basis.

The plaintiffs here have met this burden, but just barely. In addition to their assertions of a "poisoned atmosphere" surrounding police brutality cases, the plaintiffs allege that Lieutenant Frohne, the Department Advocate, had stated to plaintiffs' counsel at the hearing that the case should never have proceeded to that stage and that it was being pursued only because of the orders of his superiors. Specifically, plaintiff McGoldrick states:

> ... I overheard Sgt. Frohne tell [plaintiffs' counsel at the hearing] that he was sorry and that the case should never have progressed that far. Sgt. Frohne then told [plaintiffs' counsel] that we [sic] was prosecuting the case because he

had orders from "upstairs" to go the full route on this case.

Affidavit of Thomas D. McGoldrick dated August 16, 1984 at para. 2. Similarly, plaintiff Berry states:

> ... Sgt. Frohne, the Department Advocate prosecuting the charges, said to our counsel ... in my presence, that he was surprised that the case against us made it past the trial room. I understood Mr. Frohne to mean by his statement that he believed Arancibia's testimony was so weak that he was surprised that the Department had decided to prefer disciplinary charges against Officer McGoldrick and me.

Affidavit of Arthur W. Berry dated August 17, 1984 at para. 2.

The substance of these statements is directly contested by Lieutenant Frohne. Affidavit of William Frohne dated August 30, 1984 at paras. 4–5. Indeed, even if the statements are true, they do not conclusively demonstrate that the hearing process was biased. First, the statements attributed to Lieutenant Frohne can be interpreted simply as the prosecutor's attempt to display solidarity with his fellow officers. Second, there is no evidence that any alleged overzealousness in the prosecution of the action influenced the hearing officer's ultimate decision.

■ Nevertheless, the evidence suggesting that the Department pursued a disciplinary action, which it considered meritless, merely because of political considerations is a sufficient basis for pursuing discovery one step further. Yet, because of the tenuousness of this allegation and the need to preserve the integrity of the quasi-judicial hearing process, an oral deposition is not justified. Rather, plaintiffs may depose Commissioner Fogarty upon written questions concerning any information that he may have obtained *ex parte* and that is germane to the plaintiffs' hearing. Although Commissioner Fogarty has generally denied any such communications, plaintiffs are entitled to ask specific questions to probe that denial. *See Less v. Taber Instrument Corp.,* 53 F.R.D. 645, 647

(W.D.N.Y.1971) (party may depose witness to test asserted lack of knowledge).

### William Frohne

■ The same principles that govern the deposition of Commissioner Fogarty apply to the examination of Lieutenant Frohne. Although not himself the hearing officer, Lieutenant Frohne was the prosecutor, and thus served as an officer of the hearing tribunal. *Cf. Imbler v. Pachtman*, 424 U.S. 409, 420–29, 96 S.Ct. 984, 990–94, 47 L.Ed.2d 128 (1976) (principles of judicial immunity from suit apply to prosecutors). Thus, his decision-making processes as a prosecutor should generally be immune from discovery. As with Commissioner Fogarty, however, plaintiffs have made out a *prima facie* case of impropriety sufficient to proceed with further limited discovery. Accordingly, plaintiffs may depose Lieutenant Frohne upon written questions regarding both his alleged statements as recited in plaintiffs' affidavits and any communications he may have had outside the hearing concerning the disciplinary charges against the plaintiffs.

### Eileen Koretz

■ Assistant District Attorney Koretz is likewise protected by the immunity from discovery that inures to prosecutors. An argument can be made that Ms. Koretz's function here was more akin to that of an investigator and that she is therefore subject to general discovery. Nevertheless, plaintiffs assert that they wish to question Ms. Koretz only regarding exculpatory information that might have been obtained in the course of her investigation. Imbrogno aff. at para. 18. And therefore, because this area of inquiry is so narrow and discrete, it is appropriate to proceed initially by deposition upon written questions.

### Mark Frances

■ By contrast, Captain Frances' role in this proceeding was solely that of an investigator. Moreover, it is proper for plaintiffs to examine him concerning any communications he may have had within the Department concerning the disciplinary proceedings against the plaintiffs. Accord-ingly, plaintiffs may take an oral deposition of Captain Frances.

### Richard Izquierdo

■ Dr. Izquierdo, whose affiliation with the Department is only honorary, cannot assert any deliberative process privilege. As a key witness and participant in the disciplinary proceedings, however, he could well have been provided with information relevant to the instant action which was not contained in the hearing record. Accordingly, plaintiffs may proceed with the oral deposition of Dr. Izquierdo.

### Conclusion

For the reasons set forth above, the defendants' motion for a protective order is denied with respect to witnesses Mark Frances and Richard Izquierdo. Their motion for a protective order concerning Bruce Fogarty, William Frohne, and Eileen Koretz is granted to the extent that plaintiffs shall at this time be limited to depositions upon written questions concerning the issues outlined above. If the plaintiffs can subsequently demonstrate a need for oral depositions, based upon the witnesses' answers to the written questions, plaintiffs may move for a modification of this order at that time.

SO ORDERED.