**Lyle R. GOETZ, individually, and on behalf of all others similarly situated, Plaintiff,**

**Mark Cans and Anna Selletti, individually, and on behalf of all others similarly situated, Intervenors,**

**v.**

**The Honorable Matthew CROSSON, in his official capacity of chief administrator of the courts of New York, and Dr. Richard C. Surles, in his official capacity of Commissioner of the New York State Office of Mental Health, Defendants,**

No. 88 Civ. 9134 (GLG).

United States District Court,
S.D. New York.

Nov. 23, 1993.

---

Mental Disability Law Clinic, Touro College, and Jacob D. Fuchsberg Law Center, Huntington, NY, for plaintiff, intervenors, and class members (William M. Brooks, of counsel).

Robert Abrams, Atty. Gen. of the State of N.Y., New York City, for defendants (Barbara K. Hathaway, of counsel).

## OPINION

GOETTEL, District Judge:

This case began with the allegation by plaintiffs that, *inter alia*, the Fourteenth Amendment's due process clause required the State of New York to provide a psychiatrist to indigent individuals subject to involuntary commitment or retention proceedings to testify on their behalf. This court held that the due process clause does not confer an absolute right to such assistance. *Goetz v. Crosson*, 769 F.Supp. 132 (S.D.N.Y.1991). The Second Circuit affirmed this holding, 967 F.2d 29 (2d Cir.1992), but remanded for consideration of another, narrower issue: whether alleged deficiencies in the process of obtaining independent psychiatrists for involuntary commitment and retention hearings in Dutchess County, when the presiding judge believes that such testimony is necessary, create a constitutional violation. Having completed discovery, both sides now move for summary judgment.

We will presume familiarity with the decisions mentioned above, as well as with our decision granting motions for intervention and class certification, and dismissing plaintiffs' claim relating to the Fifth Amendment privilege against self-incrimination. *See Goetz v. Crosson*, 728 F.Supp. 995 (S.D.N.Y. 1990). Therefore, we will not revisit the entire history of this case.

## FACTS

Under New York law, the state may involuntarily hospitalize a person alleged to be mentally ill and in need of care upon the certification of two examining physicians. N.Y. Mental Hyg. Law § 9.27(a). The constitution also requires clear and convincing proof that the mentally ill person poses a substantial threat of physical harm to him or

herself or to others. *Goetz,* 967 F.2d at 31. This period of involuntary hospitalization may not exceed sixty days without court approval. N.Y. Mental Hyg. Law § 9.33(a). At any time during this period, the person involuntarily admitted may request a hearing on the need for continued involuntary care, which must be held within five days of the request. New York Mental Hyg. Law § 9.31.

The institution must, absent further proceedings, release the patient within sixty days of the involuntary commitment or thirty days after the denial of an application for release, whichever is later. New York Mental Hyg. Law § 9.33(a). If the institution's director determines that further involuntary hospitalization is required, he may apply to the state court for a retention order, which is effective for an additional six months. New York Mental Hyg. Law § 9.33(a), (b). The patient may request a hearing to challenge the requested detention order, which must be held within five days of the request. New York Mental Hyg. Law § 9.33(a), (c). When the six months have expired, the institution may obtain another retention order effective for up to an additional year. New York Mental Hyg. Law § 9.33(d). The institution may obtain further retention orders, each effective for up to two years. *Id.* All of these retention orders may be similarly challenged by the patient. *Id.*

The involuntarily admitted patient may request a rehearing and review of any retention order by a judge other than the one who signed the original order. The patient also has the right to a jury trial. N.Y. Mental Hyg. Law § 9.35. A patient has the right to counsel during all these proceedings for involuntary commitment or retention, including court-appointed counsel if the patient is financially unable to obtain representation. N.Y. Judiciary Law § 35(1)(a). During these proceedings, the court may appoint up to two psychiatrists to examine the patient and testify at the hearing. N.Y. Judiciary Law § 35(4). Psychiatrists employed at a state institution are not eligible for such appointment. N.Y. Court Rules § 822.3. The Second Circuit has labelled psychiatrists so appointed "independent psychiatrists." *Goetz,* 967 F.2d at 31.

Independent psychiatrists "receive reimbursement for expenses reasonably incurred and reasonable compensation for such services." N.Y. Judiciary Law § 35(4). Such compensation may not exceed $200 for one psychiatrist or $300 for two psychiatrists, although in "extraordinary circumstances" the court can exceed these limits. *Id.*

Both parties agree that the appointment of an independent psychiatrist generally results in a delay of at least a month in the affected court proceeding (four to six weeks, in the words of the plaintiffs; four to five weeks, in the words of the defendants), while disagreeing on the causes and legal import of the delay.

## THE DECISION OF THE SECOND CIRCUIT

In affirming this court's conclusion that indigent patients contesting their commitment or retention have no necessary or absolute right to a psychiatrist to act as their expert witness, the Second Circuit emphasized the role of independent psychiatrists: "Appellants' right to a testifying psychiatrist, therefore, is fulfilled so long as constitutionally adequate procedures exist for the appointment of an independent psychiatrist." 967 F.2d at 35.

The court went on to describe the problems with obtaining independent psychiatrists alleged by plaintiffs in their appeal:

> In their complaint, appellants allege numerous deficiencies in the way Section 35(4) has been applied in Dutchess County. These include allegations that: (i) independent psychiatrists are infrequently used; (ii) only one psychiatrist is available to act as a court-appointed expert in Dutchess County, causing long delays in commitment hearings; and (iii) limitations on the compensation to be paid to court-appointed psychiatrists for their testimony reduces the number of psychiatrists willing to accept such appointments.

*Id.* at 36.

The court explained why these allegations required further consideration by this court:

Where the trier believes that an accurate assessment of the subject's psychiatric condition cannot be reliably made without the aid of an independent psychiatrist, and the subject is financially unable to procure such testimony, a cognizable due process concern may arise. The liberty and self-protection interests of the subject are at stake, the fiscal consequences to the state are far more attenuated than in the case of a claim to a consulting or independent psychiatrist in every commitment or retention proceeding, and the danger of an inaccurate ruling is established by the trier's judgment that independent psychiatric testimony is necessary. . . .

Whether New York's procedures sometimes do not provide access to the testimony of an independent psychiatrist when the presiding judge believes such testimony to be necessary cannot be determined on the record before us. We therefore remand for further proceedings on this claim.

*Id.*

The majority opinion did not, however, give any indication of what this court should do were we to find a constitutional violation.

## DISCUSSION

■ The governing law on this issue is the due process clause of the Fourteenth Amendment. It is firmly established that since involuntary civil commitment proceedings can lead to a significant deprivation of liberty, they must satisfy due process. *See Vitek v. Jones,* 445 U.S. 480, 491–92, 100 S.Ct. 1254, 1263–64, 63 L.Ed.2d 552 (1980); *Addington v. Texas,* 441 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979). Three factors guide the courts in evaluating the constitutionality of a challenged procedure: (i) the interests of the individuals affected by the procedure; (ii) the probable value of additional safeguards, and the risk of erroneous deprivation of the individuals' interests without such safeguards, and (iii) the governmental interest that will be affected by additional safeguards, including the fiscal and administrative burden. *Ake v. Oklahoma,* 470 U.S. 68, 77, 105 S.Ct. 1087, 1093, 84 L.Ed.2d 53 (1985); *Mathews v. Eldridge,*

424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

■ Due process analysis also turns on fundamental fairness. *Project Release,* 722 F.2d at 975. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

Plaintiff, Intervenors and Class Members (hereafter "plaintiffs") argue that involuntarily hospitalized patients do not seek the appointment of independent psychiatrists at court proceedings because of the long delays such appointment causes in the proceedings, resulting in an impermissible chilling of their exercise of their right to a timely judicial hearing.

Plaintiffs contend that the delay in obtaining the testimony of independent psychiatrists is caused by the shortage of psychiatrists willing to perform such services, which in turn is caused, they argue, by the statutory limits on the compensation psychiatrists can receive for such services. Plaintiffs request a declaratory judgment that New York's procedures for the appointment of independent psychiatrists pursuant to Judiciary Law § 35(4), as applied in Dutchess County, violate due process.

Defendants maintain that the delay in obtaining testimony from independent psychiatrists results largely from the time required by the independent psychiatrists to conduct a thorough evaluation, given their other obligations as private practitioners, and to a small extent from the scheduling practices of the state judges in Dutchess County. Defendants deny that the statutory fee limits have led to a shortage of psychiatrists willing to testify, and they deny the existence of any such shortage.

■ Before proceeding to our due process analysis, we consider defendants' contention that *Logan v. Arafeh,* 346 F.Supp. 1265 (D.Conn.1972), *aff'd mem sub nom. Briggs v. Arafeh,* 411 U.S. 911, 93 S.Ct. 1556, 36 L.Ed.2d 304 (1973) is dispositive of this case. *Logan* held that a Connecticut statute allowing the state to hold a person involuntarily committed to a mental institution for forty-

five days without a judicial hearing did not violate due process. *Id.* at 1269: The instant situation is distinguishable, however, since it concerns a small sub-group of those persons who challenge their involuntary commitment, for whom the trier has determined that an accurate psychiatric evaluation requires the testimony of an independent psychiatrist. The instant situation, presenting a potentially greater danger of an inaccurate ruling, presents different due process concerns from the usual involuntary commitments at issue in *Logan.*

The Second Circuit has already sketched the due process analysis for the situation where "New York's procedures ... do not provide access to the testimony of an independent psychiatrist when the presiding judge believes such testimony to be necessary," concluding that "a cognizable due process concern may arise." *Goetz*, 967 F.2d at 36. However, nothing has been presented to us in any way concerning the disappointment of presiding judges in obtaining psychiatric testimony. In fact, defendants have submitted an affidavit, uncontroverted by plaintiffs, from the Chief Clerk of the Supreme and County Courts of Dutchess County, who asserts that "[t]o my knowledge, there is no case in which the court appointed a psychiatrist pursuant to Judiciary Law § 35(4) in which this office was unable to obtain the services of a psychiatrist to perform such an evaluation."

The parties have led us instead to the issue of the constitutionality of the month-plus delays in involuntary commitment and retention hearings resulting from the appointment of an independent psychiatrist. Nevertheless, we will endeavor to adapt the Second Circuit's due process analysis to the facts presented to us.

■ As to the first prong of due process analysis, the interests of the individual, there is no genuine issue of material fact. The delays are real. The question is, does the individual have an interest in avoiding possibly unnecessary delays of at least a month in obtaining a hearing on his or her involuntary commitment due to the appointment of an independent psychiatrist, when the presiding judge believes that the psychiatrist's testimony is required for an accurate hearing?

In an earlier decision upholding the constitutionality of New York's procedures for involuntary civil commitment, the Second Circuit rejected appellants' argument that due process required an automatic preliminary probable cause hearing within forty-eight hours of commitment, followed by full commitment hearings within five days of commitment. *Project Release v. Prevost*, 722 F.2d 960, 974–75 (2d Cir.1983). The court emphasized that existing law provided for professional and judicial review of involuntary retention, "including notice to relatives and others designated by the patient, and the availability of a judicial hearing within five days of demand by the patient, relative or friend, as well as habeas corpus relief." *Id.* at 975.

The court's emphasis on the availability of judicial review within five days of a demand suggests that persons involuntarily committed have an interest in reasonably speedy judicial review of their commitment or retention. This is especially so given the inevitable "massive curtailment of liberty" following involuntary commitment to a mental institution, *Vitek*, 445 U.S. at 491, 100 S.Ct. at 1263, and given that in the instant situation there is a heightened danger of an inaccurate determination of the subject's mental state.

Of course, *some* delay in the hearing is inevitable when an independent psychiatrist is appointed, since the independent psychiatrist must have time to conduct a thorough evaluation, and since by definition an independent psychiatrist is one who has professional responsibilities other than waiting around for § 35(4) appointments. The crucial question is thus whether the delays in the instant case are reasonable in the context of due process concerns. This brings us to the second and third prongs of due process analysis.

■ The second prong of due process analysis considers the probable value of remedial measures, and the risk of erroneous deprivation of the individuals' interests without such safeguards, while the third prong concerns the burden on the government. We will consider these two prongs in tandem,

since the burden on the government of remedying an unconstitutional situation depends largely upon whether effective remedial measures are readily available to it.

Defendants have mounted a comprehensive challenge to the notion that there is any way to get independent psychiatrists in Dutchess County to complete their evaluations of involuntarily hospitalized patients in less than three to four weeks. Defendants rely principally on excerpts from depositions of the three Dutchess County psychiatrists who have been available to accept § 35(4) appointments in the past year. Defendants argue, with support from affidavits and depositions, (i) that independent psychiatrists in Dutchess County have commitments to their private patients such that the average practitioner requires four weeks to be ready to testify in court; (ii) that ordering independent psychiatrists to complete their § 35(4) appointments faster would simply make it harder to find psychiatrists willing to accept such appointments; (iii) that contrary to plaintiffs' assertions, psychiatrists have regularly received remuneration in excess of the statutory minimum for their § 35(4) appointments; (iv) that notwithstanding plaintiffs' allegation that shortages of psychiatrists have led to delays, there has never been any problem in obtaining a psychiatrist to perform a § 35(4) evaluation; and (v) that there are simply not enough psychiatrists in Dutchess County to supply an enlarged § 35(4) panel, as envisioned in one of plaintiffs' affidavits. Indeed, the record shows that recently two of the psychiatrists on the § 35(4) panel have withdrawn, citing the heavy caseload from their private patients.

Plaintiffs do not dispute that psychiatrists in Dutchess County can receive, and have received, more than the statutory maximum. However, they point out that the language of § 35(4) that the statutory maximum can be exceeded only in "extraordinary circumstances" has a depressing effect upon the willingness of psychiatrists who accept appointments. They also point out that in New York City there are apparently a number of psychiatrists available to accept appointments and that they turn out reports more rapidly than they do in Dutchess County.

However, they are quite vague about what this court can or should do about these situations. Indeed, plaintiffs' position is that it is not up to them to determine how the situation can be altered. Rather, it is up to the court to declare it a constitutional violation and to compel the State or the County to find some way to improve the situation. (The only thing certain that such a ruling would accomplish is to allow plaintiffs' counsel to receive a fee as a prevailing party.)

However, in light of the second and third prongs of due process analysis, we are unlikely to declare a situation unconstitutional when, due to the lack of effective remedial measures, such a declaration would place a considerable burden on the government. We turn, then, to the question of what can be done about the allegedly unconstitutional delays in obtaining independent psychiatric testimony.

Plaintiffs have submitted an affidavit from a public defender pointing out that the county has psychiatrists "under contract" who are used to perform psychiatric examinations of criminals pursuant to New York's Criminal Procedure Law, Article 730. These psychiatrists complete their evaluations within twenty-four hours of notification, and submit their reports the day after the evaluation. Plaintiffs imply that there is no reason why the state cannot have such psychiatrists for purposes of conducting the independent psychiatric evaluations at issue in this case. Defendants' affidavits establish, however, that the so-called "contract" psychiatrists are, in fact, independent contractors, who are specifically stated not to be officers or employees of the county, and who conduct examinations for a fee of $150 with apparently no extra payment for "extraordinary circumstances." Moreover, defendants have established that the reason Article 730 examinations can be completed so much quicker and less expensively that § 35(4) evaluations is that determination of competency to stand trial presents a much simpler medical issue than determining whether a patient should remain involuntarily committed to a mental institution. In short, there is little to suggest that Article 730 evaluations present a model for lessening the delays in obtaining § 35(4) testimony.

In another of plaintiffs' affidavits, a psychiatrist suggests that if "the court" were to set the fee for § 35(4) examinations at a sufficiently high level there would be more psychiatrists willing to perform the examinations and to do them more rapidly. We have no doubt that this is true. However, "the court" (be it the state court or this court) has no authority to set compensation rates. Indeed, if the Supreme Court of Dutchess County were to set different rates, it would have no funds for which to pay them unless the state legislature were to appropriate them.

By virtue of the earlier Court of Appeals decision, this court is left in an almost untenable position. If we were to hold a trial at this time, we might well determine that independent psychiatric evaluations can be concluded and hearings held in a week or two less time in New York City than in Dutchess County. Assuming that we determined that this week or two difference is a due process violation, we still do not see this court as having any powers by which to convert bucolic Dutchess County into a metropolitan center like New York City with a large concentration of psychiatrists, some of whom would be willing to undertake this sort of work. Nor do we see how Dutchess County could speed up independent psychiatric evaluations without undue burden.

The opinion of Judge Van Grafeilland, who concurred on the primary issue but dissented as to the remand on the issue considered herein, perceives some of the problems that this remand might produce. He notes:

> As I understand the plan proposed by my colleagues, it calls into question not only the appointment of a third expert, who is interested, but also the amount of his remuneration, and perforce the remuneration of the section 35 experts, which presently has a $200–$300 cap. In addition, the district court, upon remand, will have to take into account the alleged shortage of independent psychiatrists in Dutchess

County, the likely duration of such shortage, and its effect on the $200–$300 statutory cap. A federal court is ill-equipped to determine what adjustments, if any, should be made, and is ill-advised to force such adjustments on the State of New York as being mandated by the United States Constitution.

967 F.2d at 38. That is precisely the position that we are in. Neither the majority opinion nor the concurring opinion indicate what, if anything, we should do in the present circumstances.[1] We have no authority to alter the statutory rates for compensating independent psychiatrists, and we will not declare a situation unconstitutional when plaintiffs have failed to demonstrate that there are any readily available governmental remedies. Consequently, we deny the plaintiffs' motion for summary judgment and grant the defendants' motion for summary judgment.[2]

**SO ORDERED.**

---

1. The concurring opinion of now Chief Judge Newman affords no additional assistance since it seems to be more of a dissent from the primary issue before the Court of Appeals as to whether there is a constitutional right to have a psychiatrist provided by the state to act as an expert witness opposing the position of state doctors.

2. We could, of course, deny both the motion and cross-motion for summary judgment and certify an interlocutory appeal. However, the Court of Appeals often refuses these invitations.