Lyle R. GOETZ, individually, and on behalf of all others similarly situated, Plaintiff–Appellant,

Mark Cans and Anna Selletti, individually, and on behalf of all others similarly situated, Intervenors–Appellants,

v.

The Honorable Matthew CROSSON, in his official capacity of chief administrator of the courts of New York, and Dr. Richard C. Surles, in his official capacity of Commissioner of the New York State Office of Mental Health, Defendants–Appellees.

No. 1630, Docket 93–9357.

United States Court of Appeals, Second Circuit.

Argued June 6, 1994.

Decided Nov. 28, 1994.

William M. Brooks, Mental Disability Law Clinic, Touro College, Huntington, NY, for plaintiff-appellant and intervenors-appellants.

Barbara K. Hathaway, Asst. Atty. Gen. of the State of N.Y., New York City (G. Oliver Koppell, Atty. Gen. of the State of N.Y.), for defendants-appellees.

Before: WINTER and WALKER, Circuit Judges, and POLLACK, District Judge.*

WINTER, Circuit Judge:

A class of involuntarily committed patients in New York State mental hospitals appeals from Judge Goettel's decision that New York's procedures for the appointment of independent psychiatrists in involuntary commitment or retention hearings, as applied in Dutchess County, comport with due process. The members of the class also challenge a discovery order of the district court. We affirm.

## BACKGROUND

This action is before us for the second time. *See Goetz v. Crosson*, 967 F.2d 29 (2d Cir.1992) ("*Goetz I*"). In the first appeal, we addressed appellants' claim that, *inter alia*, the Constitution required the State of New York to provide a psychiatrist to aid counsel to, and perhaps testify for, indigent persons subject to involuntary commitment or retention proceedings. We held that there is no constitutional right to the aid of such a psychiatrist in such proceedings. *Id.* at 34–35. However, we remanded for consideration of whether, if a judge presiding over an involuntary commitment or retention hearing deter-

mines that an independent psychiatrist's testimony is needed, New York's procedures—as applied in Dutchess County—for the appointment of such an independent psychiatrist meet constitutional standards. *Id.* at 36–37. We defined an independent psychiatrist as one "unassociated with the state, who will examine the patient and testify as to the need for institutionalization ... regardless of whether the testimony supports or rejects commitment or retention. Such a psychiatrist also has no obligation to provide any other assistance to the patient or the patient's counsel." *Id.* at 31 n. 1. The district court thereafter held that the procedures did not violate the Constitution. *Goetz v. Crosson*, 838 F.Supp. 136 (S.D.N.Y.1993). We assume familiarity with our prior decision.

We briefly set out the legal context in which the issues before us arose. Due process requirements impose two conditions that must be proven by clear and convincing evidence to commit or retain a person involuntarily. First, the person must be mentally ill and require involuntary treatment. Second, the person must pose a "substantial" threat of physical harm either to himself or others. These conditions are incorporated in the New York Mental Hygiene Law that governs involuntary civil commitment. N.Y.Mental Hyg. Law §§ 9.27–9.39 (McKinney 1988). The details concerning the procedures for commitment and retention are set out in our prior opinion. *Goetz I*, 967 F.2d at 31–32.

Before commitment, an involuntary patient is generally examined by at least two psychiatrists who must determine that the patient meets the requisite conditions. Following commitment, an involuntary patient has access to an elaborate process governing retention. Initially, a patient can be retained without court order for only sixty days. Subsequent orders for six months and thereafter one year may be obtained. The patient may request a hearing before a court to review a commitment and/or retention. Throughout these extensive proceedings, the patient has a right to counsel. If the patient cannot afford representation, then the court

† The Honorable Milton Pollack, United States District Judge for the Southern District of New York, sitting by designation.

may appoint counsel. N.Y.Jud.Law § 35(1)(a) (McKinney 1983).

The court may appoint one or two psychiatrists to examine the patient and testify at commitment or retention hearings. These psychiatrists must give independent opinions and may not be associated with the state. *Goetz I,* 967 F.2d at 31. As noted, we have referred to psychiatrists so appointed as "independent psychiatrists." *Id.* Independent psychiatrists are reimbursed for expenses and receive compensation. The statute specifies a maximum expenditure on compensation of $200 for one psychiatrist and $300 for two, but it also gives the court the authority to exceed these limits in "extraordinary circumstances." N.Y.Jud.Law § 35(4) (McKinney 1983).

Appellants assert that the appointment of an independent psychiatrist in Dutchess County delays the retention proceeding by four to six weeks due to (i) the fact that there is only one physician on the Dutchess County panel that provides independent psychiatrists and ·(ii) the low fees paid to independent psychiatrists.

### DISCUSSION

To prevail on a motion for summary judgment, the moving party must demonstrate that (i) there are no genuine issues of material fact and (ii) the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In reviewing a grant of summary judgment, (i) we examine the record *de novo* and (ii) we also view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *See, e.g., Goetz I,* 967 F.2d at 33; *Dube v. State Univ. of New York,* 900 F.2d 587, 597 (2d Cir.1990), *cert. denied,* 501 U.S. 1211, 111 S.Ct. 2814, 115 L.Ed.2d 986 (1991).

Involuntary civil commitment proceedings result in a significant deprivation of liberty and therefore must satisfy due process. *Addington v. Texas,* 441 U.S. 418, 425, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979); *see also Vitek v. Jones,* 445 U.S. 480, 491–92, 100 S.Ct. 1254, 1263, 63 L.Ed.2d 552 (1980).

The three-pronged balancing test enunciated by Justice Powell in *Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976), provides guidance in determining whether delay in provision of an independent psychiatric evaluation, when required, comports with due process. *See Ake v. Oklahoma,* 470 U.S. 68, 77, 105 S.Ct. 1087, 1093, 84 L.Ed.2d 53 (1985). The three factors are: (i) the interests of the patient in question that such procedures affect; (ii) the probable value of additional procedural safeguards, along with the possibility of erroneous deprivation of the patient's interests without such safeguards; and (iii) the governmental interests—including fiscal and administrative burdens—implicated by additional procedural safeguards. *See, e.g., id.; Mathews,* 424 U.S. at 335, 96 S.Ct. at 903.

As to the first factor, the patient has a liberty interest implicated by the procedures used to appoint an independent psychiatrist. Involuntary commitment to a psychiatric facility is obviously a significant restriction on an individual's liberty. *Vitek,* 445 U.S. at 491–92, 100 S.Ct. at 1263; *Humphrey v. Cady,* 405 U.S. 504, 509, 92 S.Ct. 1048, 1052, 31 L.Ed.2d 394 (1972); *Goetz I,* 967 F.2d at 33. In addition to the effects of the actual confinement, involuntary civil commitment upon a finding of dangerousness can damage an individual's reputation. *Addington,* 441 U.S. at 425–26, 99 S.Ct. at 1809; *Goetz I,* 967 F.2d at 33. The patient also has a financial interest at stake because the Department of Mental Hygiene can levy charges for care and treatment. *Goetz I,* 967 F.2d at 33.

Regarding the second *Mathews* factor—the probable value of the additional safeguards in question and possibility of an erroneous deprivation—a more prompt examination and report by an independent psychiatrist could have some value because it might in some cases prevent an erroneous deprivation. The value, of course, would result from the reduced time that erroneously committed patients would spend in the facility. This time implicates the liberty, financial, and reputational interests of erroneously committed patients.

The damage to the patient's interests is limited, however, and does not involve the "massive curtailment of liberty" at issue in *Vitek, Humphrey,* and *Addington.* Appellants concede that a delay of two weeks would not violate any constitutional standard. At the outside, therefore, the damage to patients' interests involves a delay of two to four weeks in getting a hearing with the benefit of an assessment by an independent psychiatrist. Because there is no constitutional requirement of such an assessment, the damage to the patient's interests is limited to those cases in which the presiding judge desires the aid of an independent psychiatrist. *Goetz I,* 967 F.2d at 36. Moreover, the patients in question have already been examined by two psychiatrists, a procedure that clearly reduces the chances of an erroneous deprivation.

We believe the third *Mathews* factor is decisive. At bottom, swiftness or delay in obtaining the services of an independent psychiatrist is the result of the size of the pool of available psychiatrists in the geographic area who are not associated with the state and thus have a practice outside the institution in which the particular patient is confined. Such a practice will generally entail professional obligations, such as appointments with regular patients, that may preclude an immediate response to a request from a presiding judge in a commitment or retention hearing.

The delay of which appellants complain is thus directly related to the number of psychiatrists in or near Dutchess County who are not associated with the state. Some of the psychiatrists in Dutchess County are associated with a state-run facility and thus are not suitable to serve as an independent psychiatrist. Those who are suitable generally have obligations that preclude them from acting immediately upon a request to serve as an independent psychiatrist.[1] Appellants suggest that the $200 payment for an independent psychiatric assessment is too low and a cause of the delay. However, the presiding judge has discretion to pay more when he or she believes it necessary, and the record reflects that payments in excess of $200 are made. At least one payment in excess of $1,000 is in the record. Moreover, the record does not support the conclusion that greater fees would eliminate the delay.

Appellants' benchmark for a constitutionally timely access to independent psychiatrists is Manhattan and the Bronx—where the delay is said to consist of one to two weeks. Because the procedures do not vary between counties, there is either a greater concentration, or less likely, greater underutilization, of psychiatrists in Manhattan and the Bronx than in Dutchess County. However, we do not believe that constitutional standards fashioned under *Mathews* are governed by the demographics of regions other than those in which the confinement or retention hearing is actually held. The third *Mathews* factor requires a hard look at the realities of the case at hand, not a comparison to best-case scenarios.

What is lacking in appellants' arguments are practical remedies for the delay resulting from the number of psychiatrists available in Dutchess County. Appellants do not offer any credible evidence that additional psychiatrists, as yet unidentified, are available to conduct independent evaluations within Dutchess County. It would be possible, although quite expensive, for the state to retain psychiatrists on a stand-by basis—for example, to keep one day a·week open—in case such an examination and report were requested. However, the independence of such a psychiatrist would be open to serious challenge because he or she would be receiving, and perhaps would be dependent upon, substantial amounts of money from the state for essentially no work. Indeed, one of the causes of the present litigation is appellants' suspicion that psychiatrists associated with the state harbor a preference for confinement. A psychiatrist retained by the state to be available at short notice would hardly escape a similar suspicion.

---

1. Appellants note that psychiatric reports in competency hearings for criminal defendants, *see* N.Y.Crim.Proc.Law §§ 730.10–730.70 (McKinney 1984), can be obtained more swiftly than in confinement hearings. However, the issues in a competency hearing—ability to understand the charges and participate in one's defense, *id.* § 730.10(1)—seem far less complex and more quickly resolved than the issues in a confinement hearing—danger to oneself or to others. Whereas the former issues may generally be resolved simply by interviewing the defendant, the latter issues generally require interviews of institution staff, friends of the patient, and relatives.

The state might also pay psychiatrists to commute from New York City to examine and report on a patient in Dutchess County. However, this remedy would be very expensive because commuting to Dutchess County to conduct an examination of the patient and interviews of others would require the absence of the physician from his or her regular office for at least a day—and perhaps days. The remedy thus also assumes the availability of psychiatrists who always have upcoming days entirely without appointments. The record does not support the proposition that such psychiatrists are regularly available, or that, if available, they would be suitable consultants. Moreover, a psychiatrist with the required flexibility in scheduling would appear to earn little apart from periodic appointments in Dutchess County and would be deemed dependent upon income as a state-paid independent psychiatrist.[2]

■ Appellants' final claim is that the restrictions placed by the district court upon discovery constituted error. Discovery rulings are reviewed for abuse of discretion. *See Murphy v. International Business Machs. Corp.*, 23 F.3d 719, 722 (2d Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 204, 130 L.Ed.2d 134 (1994); *Gelb v. American Tel. & Tel. Co.*, 813 F.Supp. 1022, 1034 (S.D.N.Y. 1993). A district court abuses its discretion "when the action taken was improvident and affected the substantial rights of the parties." *In re Surety Ass'n of America*, 388 F.2d 412, 414 (2d Cir.1967) (internal quotation omitted).

■ We do not believe that the record demonstrates a limitation of appellants' substantial rights. The scope of the remand was to determine the constitutionality of the procedures for appointing an independent psychiatrist "where the presiding judge determines that such testimony [of an independent psychiatrist] is necessary to a reliable assessment of a patient." *Goetz I*, 967 F.2d at 36–37. Therefore, the district court was within

its discretion when it limited questioning to "what practical problems the state justices may have encountered in obtaining independent psychiatrists in those cases where they believe one should be appointed."

■ The disallowance of questions relating to the processes of judicial decision was hardly error. *See Fayerweather v. Ritch,* 195 U.S. 276, 306–07, 25 S.Ct. 58, 67–68, 49 L.Ed. 193 (1904). The inner workings of administrative decision making processes are almost never subject to discovery. *See, e.g., United States v. Morgan,* 313 U.S. 409, 422, 61 S.Ct. 999, 1004–05, 85 L.Ed. 1429 (1941); *National Nutritional Foods Ass'n v. FDA,* 491 F.2d 1141, 1144–45 (2d Cir.), *cert. denied,* 419 U.S. 874, 95 S.Ct. 135, 42 L.Ed.2d 113 (1974); *McGoldrick v. Koch,* 110 F.R.D. 153, 155–56 (S.D.N.Y.1986). Clearly, the inner workings of decision making by courts are kept in even greater confidence.

The judgment of the district court is affirmed.

---

2. Appellants argue that the delay in obtaining the assistance of an independent psychiatrist chills patients in requesting such assistance. This argument applies only to those patients who expect to be discharged before such assistance would be

available, and the asserted harm is again the delay in release. We see no need to add to the discussion in the text with regard to this argument.